# In the United States Court of Federal Claims

Nos. 22-573, 22-620, 22-630
(Filed:  3 February 2023[*])

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MICHAEL STAPLETON ASSOCIATES, LTD, | \* | |
| | \* | |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| v. | \* | No. 22-573 |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant, | \* | |
| | \* | |
| and | \* | |
| | \* | |
| AMERICAN K-9 DETECTION SERVICES, LLC, | \* | |
| | \* | |
| | \* | |
| Defendant-Intervenor. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GLOBAL K9 PROTECTION GROUP, LLC, | \* | |
| | \* | |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| v. | \* | No. 22-620 |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| AMERICAN K-9 DETECTION SERVICES, LLC, | \* |
| | \* |

---

[*] This Opinion was originally filed under seal on 31 January 2023 pursuant to the protective order in this case.  The Court provided the parties an opportunity to review this opinion for any proprietary, confidential, or other protected information and submit proposed redactions by 3 February 2023.  GK9 proposed redactions on 3 February 2023. The Court accepts the party's proposed redactions and reissues the order, with a few minor, non-substantive corrections and redacted language replaced as follows:  "[XXXXX]."

```
                                    *
                 Plaintiff,         *
                                    *
v.                                  *                    No. 22-630
                                    *
THE UNITED STATES,                  *
                                    *
                 Defendant.         *
                                    *
*****************************************
```

Daniel J. Strouse, of Cordatis LLP, with whom was Joshua D. Schnell, both of Arlington, VA, for plaintiff American K-9 Detection Services, LLC.

W. Brad English, of Maynard, Cooper & Gale, PC, with whom were Jon D. Levin, Emily J. Chancey, Mary Ann Hanke, and Nicholas P. Greer, all of Huntsville, AL, for plaintiff Global K9 Protection Group, LLC.

Ryan C. Bradel, of Ward & Berry PLLC, with whom was P. Tyson Marx, both of Tysons, VA, for plaintiff Michael Stapleton Associates, Ltd.

John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, with whom were Reginald T. Blades Jr., Assistant Director, Patricia M. McCarthy, Director, Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Shoshana O. Epstein, Attorney, Micah Zomer, Attorney, and Stephen Boardman, Attorney, United States Postal Service, all of Washington, DC, for defendant.

# **ORDER**[1]

**HOLTE**, **Judge**.

Plaintiffs, Michael Stapleton Associates, Ltd. ("MSA"), Global K9 Protection Group, LLC ("GK9"), and American K-9 Detection Services, LLC ("AMK9"), bring three separate pre-award bid protests, consolidated on 13 June 2022, against the United States Postal Service ("USPS") in which the USPS solicited a contract for canine explosive detection and alarm resolution services under Solicitation No. 2B-20-A-0087. The Court issued two previous orders in this case to address the USPS's February 2022 resolicitation. First, on 26 October 2022, the Court issued a short order immediately following oral argument "to seek USPS guidance on several reevaluation or resolicitation factors to craft an equitable remedy, if any, in the forthcoming, more detailed order."[2] Then, on 23 November 2022, the Court made a "determination on the motions and generally agree[d] with the USPS's proposed plans to phase-out MSA and disqualify MSA from future performance as a result of [organizational conflict of

---

[1] For full background of the facts, procedural history, and issues of this consolidated pre-award bid protest, this order must be read in conjunction with the Court's 23 November 2022 Opinion and Order, ECF No. 89 ("23 Nov. 2022 Op. & Order").

[2] 26 October 2022 Order at 2, ECF No. 72.

interest ('OCI')]-tainted solicitations" but required "operational detail from the USPS" in the form of "additional briefing" before entering a final judgment.[3]

The 23 November 2022 order necessitated a supplemental response from the government, and instructed: "If desired, any plaintiff may respond"[4] to "the USPS's proposed plans to phase-out MSA and disqualify MSA from future performance as a result of OCI-tainted solicitations."[5] All parties—except MSA—responded to the government's additional briefing on the remaining reevaluation issues identified in the 23 November 2022 order. AMK9 did not object to the USPS's proposed roll-out, but GK9 objected to certain the USPS rollout changes. Specifically, GK9 furnished arguments regarding: (1) the USPS's rationale for reevaluating only the clusters awarded to MSA and not the clusters awarded to K2 Solutions, Inc. ("K2"), a third-party screening service, and AMK9; and (2) the USPS characterizing GK9's [XXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXX].[6] MSA later filed a motion for a stay or injunction pending an appeal of the Court's 23 November 2022 order and motion to expedite consideration of its motion to preserve the *status quo* of the USPS's 2022 resolicitation until the Federal Circuit can hear MSA's appeal. In conjunction with the 23 November 2022 order, this order addresses GK9's concerns with the USPS's proposed roll-out plan, finalizes the permanent injunction, and, for the following reasons, sustains AMK9's and GK9's pre-award bid protests and denies MSA's motion for a stay of the Court's 23 November 2022 order.[7]

## I.     Procedural and Factual History

At the 21 October 2022 oral argument addressing all parties' pre-award motions for judgment on the administrative record, the Court understood services at new airport sites (where the airport has no existing screening services) to begin 9 November 2022, and the first transition away from MSA to occur on 14 December 2022. *See* Roll-Out Schedule at 3–4, ECF No. 67; 15 Sept. 2022 Order, ECF No. 63. After extensive discussion at the end of oral argument, the Court determined it did "not have enough information to make [an equitable] determination." 26 Oct. 2022 Order at 5, ECF No. 72. On 26 October 2022, the Court, therefore, requested the USPS to provide guidance, in advance of a comprehensive order "on the prospect of resoliciting or reevaluating the 2022 resolicitation in the event the Court's equitable remedy disqualifies MSA from participation in the 2022 resolicitation." *Id.* The USPS filed two supplemental statements

---

[3] 23 Nov. 2022 Op. & Order at 3, 51, 68.

[4] *Id.* at 68.

[5] *Id.* at 3.

[6] GK9 originally also disputed the timelines for: (1) obtaining badges and clearances; and (2) making a new best value determination under the canine screening solicitation and for resoliciting the alarm resolution services. *See* GK9's Resp. to 23 Nov. 2022 Order at 4–5. At oral argument, GK9 agreed to withdraw the temporal arguments after "understand[ing] the overall approach more as it relates to the badging" and "[h]aving discussed further the schedule as it relates to [the USPS's] anticipated disharmonizations about the MSA-awarded clusters." Tr. at 76:1–14, 82:20–83:14.

[7] As discussed in detail *infra* Section V.C, the Court assumes MSA's appeal is premature. To the extent it is not premature, the Court issues this order under Rule 62.1(a)(3) of the Rules of the Court of Federal Claims ("RCFC"), "Indicative Ruling on Motion for Relief That is Barred by a Pending Appeal," which addresses "[r]elief [p]ending [a]ppeal." Rule 62.1(a)(3) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.")

offering guidance and only plaintiff GK9 responded with concerns. *See* Gov't's First Resp. to 26 Oct. 2022 Order, ECF No. 71; Gov't's Second Resp. to 26 Oct. 2022 Order, ECF No. 77; GK9's Resp. to 26 Oct. 2022 Order, ECF No. 75.

As fully detailed in the Court's 23 November 2022 order, the government provided a proposed roll-out schedule on 31 October 2022.  31 Oct. 2022 Decl. of Jeremiah D. Baker at 8–9, ECF No. 71-1. The USPS filed an amendment to its response on 22 November 2022, ECF No. 83.  The government's roll-out plans submitted on 30 October 2022 and 22 November 2022 inform the Court's perspective on injunctive relief.

On 23 November 2022, the Court issued an order "generally agree[ing] with the USPS's proposed plans to phase-out MSA and disqualify MSA from future performance as a result of OCI-tainted solicitations."  23 Nov. 2022 Op. & Order at 3.  The Court, however, requested additional briefing to render final judgment on injunctive relief given remaining "[l]ogistical concerns."  *Id.* at 50–51.  Specifically, the Court asked for the USPS's rationale for reevaluating only the clusters awarded to MSA and not the clusters awarded to K2 and AMK9; information on the timeline related to obtaining badges and clearances; notice on the anticipated timeline for making a new best value determination under the canine screening solicitation and for resoliciting the alarm resolution services; and context regarding the alarm resolution vendor versus subcontractor issue.  On 30 November 2022, the government furnished additional information on its rationale, timing, and alarm resolution solicitation language in response to the Court's 23 November 2022 order.  *See* Gov't's Resp. to 23 Nov. 2022 Order, ECF No. 88.  AMK9 filed a supplemental brief agreeing with the government's "additional clarity" on its proposed plan.  AMK9's Resp. to 23 Nov. 2022 Order at 1, ECF No. 93.  GK9 filed a supplemental brief arguing:  (1) "[b]ecause MSA's ineligible proposal was part of USPS's initial and second level best value determinations, both are unreasonable"; and (2) "GK9 did not propose a subcontractor, so there is no basis for cancelling the alarm resolution solicitation."[8] GK9's Resp. to 23 Nov. 2022 Order at 2, 6, ECF No. 94.  While MSA did not respond to the Court's 23 November 2022, it did file a notice of appeal from the Court's 23 November 2022 order.  *See* MSA's Notice of Appeal, ECF No. 86.  On 1 December 2022, MSA, in turn, filed a motion for a stay of the Court's 23 November 2022 order and a motion to expedite consideration of its motion.  *See* MSA's Second Mot. for a Stay, ECF No. 90; MSA's Mot. to Expedite Consideration of Stay, ECF No. 91.

On 2 December 2022, the Court granted MSA's motion to expedite consideration of its motion for a stay*,* ECF No. 92.  On 8 December 2022, the government, GK9, and AMK9 all filed responses to MSA's motion for a stay of the Court's 23 November 2022 order.  *See* Gov't's Resp. to MSA's Mot. to Stay, ECF No. 95; GK9's Resp. to MSA's Mot. to Stay, ECF No 96; AMK9's Resp. to MSA's Mot. to Stay, ECF No. 97.  On 15 December 2022, MSA filed its reply in support of its renewed motion for a stay or injunction pending appeal.  MSA's Reply for Second Mot. for a Stay. ECF No. 99.  MSA also filed a supplemental brief regarding its motion for a stay, ECF No. 105.  On 5 January 2022, the Court held oral argument to discuss the remaining injunctive relief items and MSA's motion for a stay.  *See* Order Setting Oral Arg.,

---

[8] *See supra* n.6.

ECF No. 101; Oral Arg. Tr. ("Tr."), ECF No. 104.  The Court now addresses the remaining questions to arrive at the final decision concluding these 2022 consolidated pre-award protests.[9]

## II.   Injunction Factors

In evaluating whether permanent injunctive relief is warranted in a particular case, a court must consider:  (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff has shown irreparable harm without the issuance of the injunction; (3) whether the balance of the harms favors the award of injunctive relief; and (4) whether the injunction serves the public interest.  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).  "Whether declaratory or injunctive relief is the appropriate remedy, the court must consider the equities, including the balance of harms, when making such a determination."  *Fisher Sand & Gravel Co. v. United States*, 143 Fed. Cl. 247, 254 n.8 (citing *PGBA, LLC v. United States*, 389 F.3d at 1228).  As detailed in the 23 November 2022 order:

> The injunction factors favor injunctive relief for AMK9 and GK9.  In addition to prevailing on the merits of the protest, AMK9 and GK9 establish they will suffer irreparable harm if the Court withholds injunctive relief.  The balance of hardships tips in AMK9's and GK9's favor and an award of injunctive relief is in the public interest.  Accordingly, the issuance of a permanent injunction is warranted.

23 Nov. 2022 Op. & Order at 57.  This order, therefore, finalizes the 23 November 2022 order's conclusion and uses the supplemental briefing from the USPS and GK9 to address the agency's injunction recommendation and enter a permanent injunction.

Review of the relevant caselaw establishes two situations in which a successful protest will necessarily require the agency to resolicit the procurement in considering the equities.  In the first situation, the protestor's allegations involve illegality pervading the source selection process so the integrity of the procurement process is called into question.  *See CACI, Inc.–Fed. v. United States*, 719 F.2d 1567, 1575 (Fed. Cir. 1983).  In *CACI*, the protestor's allegations centered on relationships between the awardee's vice president and four members of the agency's Technical Evaluation Board ("TEB").  *See id.* at 1570–71.  The awardee's vice-president was a former agency employee, and the four TEB members were his former colleagues, with whom he had either prior professional or social relationships.  *Id.*  The four TEB members had the power to influence the award of the contract, and CACI alleged the

---

[9] The Court also notes its extensive case history with these parties and contracts in a 2020 pre-award bid protest case which remains stayed pending the outcome of this resolicitation of the original contract.  For full discussion of the related cases, which resulted in this 2022 resolicitation and pre-award protests:  *see Am. K-9 Detection Servs., LLC v. United States*, No. 20-1614 (Fed. Cl. Mar. 18, 2020), ECF No. 55 at 28 (remanding the case to the agency considering "the Court's finding the USPS [Contracting Officer ('CO')]'s investigation [as] arbitrary and capricious for failing to consider all information related to the potential OCI in this case"); *and Am. K-9 Detection Servs., LLC v. United States*, No. 20-1614 (Fed. Cl. Aug. 4, 2020), ECF No. 112 at 3 (remanding the case "for the second time consideration of plaintiffs' organizational conflict of interest ('OCI') allegations given the continued lack of full investigation from the contracting officer leading to several unresolved issues").  This order, accordingly, concludes the third time the Court has ordered the USPS to conduct a reevaluation of its solicitation process to which the USPS responded by initiating a voluntary resolicitation.

relationships with the awardee's vice-president resulted in impropriety in the bid evaluation process benefitting the awardee. *Id.* The Federal Circuit agreeing with the trial court held CACI should prevail in its protest, and the agency would necessarily have been required to repeat the bidding process. *Id.* at 1575. The asserted injury was the government's breach of its implied contract to deal fairly with all bidders and denying CACI the opportunity to have its bid considered solely on its merits. *Id.* The Federal Circuit affirmed "[a]n injunction barring the award would correct [the] alleged injury [because] it would require the government, *if it wants to go ahead with the procurement, to repeat the bidding process under circumstances that would eliminate the alleged taint of the prior proceedings*." *Id.* (emphasis added). The court held when sound judicial discretion so dictates, a movant may obtain permanent injunctive relief by showing no rational basis for the actions of executive officials. *CACI*, 719 F.2d at 1572.

The second situation requiring resolicitation is when the awardee was the only acceptable offeror in the procurement, so if the court were to set aside the award, there would be no other remaining offeror to which the agency could turn. Lacking other acceptable offerors, the agency would have no choice but to resolicit the procurement. *See, e.g., Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) (finding an unsuccessful offeror had standing to challenge the responsibility decision of the awardee, the only technically acceptable offeror in the procurement); *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1356, 1359 (Fed. Cir. 2015) (finding an unsuccessful offeror had standing to challenge the award to the awardee, the only technically acceptable small business in the small business set-aside procurement).

The Court may not "substitute its judgment for that of the agency" but instead looks to see if an agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. United States*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085–86 (Fed. Cir. 2001). The court does not second-guess the decisions being reviewed but looks at the "why" of the decision. *USfalcon, Inc. v. United States*, 92 Fed. Cl. 436, 462 (2010) (Wolski, J.); *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 247 (2011) (Wolski, J.). The inquiry "involves verifying that objective elements contained in the agency's analysis . . . correspond to the evidence in the record and checking to see if subjective judgments are reached elsewhere in the analysis that contradict the evaluators' conclusions making the decision too 'implausible.'" *USfalcon, Inc.*, 92 Fed. Cl. At 462 (internal citations omitted).

## III.  The USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

The USPS's Third-Party Canine-program include both canine screening program and alarm resolution service as separate solicitations. The USPS organized a roll-out schedule of service locations to deploy "teams" to screen air cargo on passenger airlines into geographic "clusters" of airports. 2020 Admin. R. ("2020 AR") at 3 (USPS Supply Management Competitive Purchase Plan), ECF No. 23-2, *Am. K-9 Detection Servs., LLC v. United States*, No. 20-1614 (Fed. Cl. Nov. 18, 2020). Each service location (referred to as "sites") has its own contract, and offerors could bid on select clusters of sites. 2022 AR at 6673 (Canine Screening

Solicitation).  Each site is scheduled to roll-out at a different time, and some of the sites have existing MSA screening services, whereas other airports obtain incipient services.  2020 AR at 3.  *See generally* 23 Nov. 2022 Op. & Order (detailing the factual background of the USPS's Third-Party Canine-program).  The Court analyzes the issues brought up by the parties to determine the injunctive relief for the canine screening program.

### A.     The Parties' Arguments Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

The initial dispute between the parties concerns whether the USPS should reevaluate or resolicit all clusters or only clusters previously awarded to MSA.  The parties also dispute the adequacy of the agency's record in concluding the reevaluation of only clusters previously awarded to MSA.  The Court summarizes the parties' arguments in turn before determining the appropriate injunctive relief.

#### 1.      The Government's Arguments Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

The government explained the USPS "operations personnel reformed the rollout schedule . . . previously provided to the Court to reflect changes necessary to extricate MSA from any [canine] screening awards . . . .  The amended rollout schedule would move the contracts awarded for [canine] screening to AMK9 and K2 to the top of the schedule and would allow new sites that were not awarded to MSA to be implemented first."  31 Oct. 2022 Decl. of Jeremiah D. Baker at 3–4.  The government concluded "[r]emoving MSA from the procurement . . . will have no impact on the technical evaluation of the remaining offerors" because "the [Technical Evaluation Team ('TET')] assigned adjectival ratings for each of the three technical factors, as well as an overall adjectival technical rating for each offeror's proposal considering the varying levels of importance assigned to each factor.  Thus, with respect to the technical evaluation, each proposal was evaluated against the evaluation factors, not against the proposals of other offerors."  30 Nov. Decl. of Jeremiah D. Baker at 3–4, ECF No. 88-1.  Regarding the price evaluation factor, the government explained, "The offerors were requested to propose prices [made up of an all-inclusive hourly rate] for each site location within each cluster for which they wished to provide a proposal."  *Id.* at 4.  "Using a Microsoft Excel formula, this amount was then multiplied by the scheduled hours per week (as set in the Solicitation), the number of scheduled dog teams needed, and then multiplied by the number of weeks per year[,]" which "allowed [the USPS] to arrive at a total price (including the base period plus all options) for each offeror for each geographic cluster."  *Id.*  As such, the government maintains "[r]emoving MSA from the procurement will not impact the pricing offered by the remaining offerors."  *Id.*  The second-level analysis considered "relative rankings within clusters, efficiency, operational impact, USPS contract administration resources and duties, and the appropriate number of supplier-mix to mitigate risk."  *Id.* at 4–5.  The government contends, based on the factors, the USPS determined "a three-supplier solution provided overall best value," which included MSA as one of three suppliers.  *Id.* at 5.  The government states the USPS "will have to perform a second-level best value analysis to determine whether a three-supplier solution still provides the overall best value" with MSA removed from the procurement.  30 Nov. Decl. of Jeremiah D. Baker at 5.

The government explained in more detail the relationship between the first- and second-best value analyses at oral argument. The first level consists of a "traditional technical/price tradeoff," meaning the TET assessed the technical merit of each proposal and assigned adjectival ratings: excellent, very good, good, and fair before evaluating price. *See* Tr. at 38:8–19. Upon weighing the ratings and price together, the TET ultimately assigned an overall rating for best value to each proposal, so the offerors "are being evaluated not relative to each other, but relative to the statement of work [('SOW')]."[10] *Id.* The 2020 SOW is essentially the same as the 2022 SOW, so the repeated evaluation analysis enables the calculation of an outcome with one party absent. *See* 2022 AR at 6800–05 (2022 SOW Substantive Revisions). The second level analysis was a result of the USPS's "determination that it would be in the Postal Service's interest going forward to have access to several suppliers, so one supplier isn't predominant or [possesses] too strong of a negotiating position, whatever the reason could be." Tr. at 38:20–25. Following the technical/price tradeoff, the TET assigns rankings cluster-by-cluster to assess "whether in an individual instance . . . [the USPS would] go with someone who was second place in a given cluster rather than first place, in the interest of having multiple suppliers." Tr. at 39:4–15.

The government articulates the contracting officer ("CO"), Jeremiah Baker determined: (1) MSA was not a factor in clusters awarded to AMK9 and K2 because "MSA is out of the equation" and was not the awardee; (2) "GK9, the other part of the complaint, wasn't in second place in those clusters"; and (3) for clusters awarded to MSA, "MSA still would not be a factor" because "they were first place [regarding the] technical/price tradeoff on those clusters, but they are taken out." Tr. at 40:12–41:10.[11] As such, the USPS "will just be evaluating both the technical/price tradeoff and the second-level analysis for those clusters." Tr. at 41:7–9.

### 2. GK9's Arguments Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

GK9 argues, "By limiting the scope of the source selection only to the awards made to MSA, USPS is not only making a best value decision that lacks a rational basis, but it also deprives itself and other offerors of a full tradeoff analysis that might alter its award decision." GK9's Resp. to 26 Oct. 2022 Order at 3. In support of its contention, GK9 categorizes "MSA's ineligible proposal [as] part of USPS's initial and second level best value determinations," so "both are unreasonable." GK9's Resp. to 23 Nov. 2022 Order at 2. For the first-level analysis, GK9 maintains "[i]t is unclear how MSA's exclusion would have impacted the initial tradeoffs at the cluster level" given the lack of documents and detail. *Id.* at 3. For the second-level analysis, GK9 reasons, "because MSA won some individual clusters, USPS necessarily considered it at the second level when determining that it wanted a 'three-supplier solution,'" and therefore, "[t]he initial best value decisions impacted the second level decisions." *Id.* at 3–4. GK9 clarifies

---

[10] As documented in the Court's 23 November 2022 order, the contracting officer responsible for investigating further whether the contract award to MSA was tainted by an OCI following the second Court-ordered remand found "concepts that MSA appears to have assisted the USPIS with developing appear in the [2020 Statement of Work ("SOW")], including quality control concepts." 23 Nov. 2022 Op. & Order at 5. Ultimately, changes to the 2022 SOW were "not major departures from" the 2020 SOW. *Id.* at 37.

[11] When probed if MSA "would have been a factor in [the second-level] analysis[,]" "if MSA was originally awarded some portion of some clusters," the government explained, "Well, our understanding is all of that is theoretically possible. It didn't happen here because the party that was complaining, GK9, in the clusters that were awarded to AMK9 and K2, [GK9 wasn't] the second place." Tr. at 39:20–40:3.

it "has never suggested that excluding MSA would change the ratings the Agency gave GK9's proposal . . . [i]nstead, GK9's concern has always been the impact MSA's participation had on the two levels of best value decisions." *Id.* at 2.  GK9 highlights, "Neither the Court nor the parties have the records that show exactly what USPS considered in either best value decision [because] those decisions are still tied up at the [Supplier Disagreement Resolution Official ('SDRO')] level and not currently before the Court." *Id.* at 3.  GK9 maintains "MSA impacted both best value decisions, [so] the Court should require USPS to conduct new initial and second level best value decisions without MSA," and "[o]nly by doing so can the Court ensure that the taint from MSA's participation is fully flushed out of the process."  GK9's Resp. to 23 Nov. 2022 Order at 3–4.

GK9 understands the government's evaluation process but specifically takes issue with the lack of documentation beyond CO Baker's declaration.  GK9 highlights:

> the law is very clear in terms of tradeoff analyses that are based on flawed evaluations being themselves irrational.  [H]ere, we've got a disqualified offeror that unquestionably impacted all of the initial best value determinations, and [GK9 doesn't] think there's any way to say, particularly on the record that we have here, that [MSA] didn't impact the second.

Tr. at 43:1–7; *see* GK9's Resp. to 23 Nov. 2022 Order at 3–4 (citing *One Largo Metro, LLC v. United States*, 109 Fed. Cl. 39, 77 (2013); *BayFirst Sols., LLC v. United States*, 102 Fed. Cl. 677, 695 (2012)).  GK9 argued it does not "think that the technical and price evaluation that they have done for each offeror on an individual basis—the underlying initial technical evaluation—necessarily changes because MSA has been excluded."  Tr. at 41:22–42:1.

### 3.    AMK9 Arguments Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

"AMK9 agrees with the government that it is reasonable to limit its review of canine screening to only those clusters previously awarded to MSA."  AMK9's Resp. to 23 Nov. 2022 Order at 1.  AMK9 states "it believes that all eligible offerors (to include AMK9 and K2) should be considered for the geographic clusters previously awarded to MSA."  *Id.* at 2.

### 4.    MSA's Arguments Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

MSA did not respond to the USPS's proposed plan after the Court's 23 November 2022 order.

### B.    Analysis Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

At oral argument, GK9 clarified its request for CO Baker's documentation of his best value analyses.  GK9 elucidated it is "not saying go back to square one and reevaluate every proposal from scratch"; instead, it wants the records to substantiate the best-level analyses of CO

Baker. Tr. at 42:1–8; *see* Tr. at 56:12–19 ("THE COURT:  So, then I can order Baker to redo the evaluation in order to prove what he's saying here? . . . Does that satisfy your concern?  [GK9]: "Absolutely[.]")  According to GK9, the USPS does not "need to reevaluate every proposal individually [but does] need to do the tradeoff part again with MSA out of the picture." Tr. at 59:25–60:3.  GK9 argues the rationale behind CO Baker's evaluation is lacking because "it seems . . . MSA's participation at the first best-value level was pervasive[, a]nd as the second best-value tradeoff has been explained, it's basically a layered evaluation that MSA would have necessarily impacted because it builds on the first tradeoff analysis." Tr. at 42:17–25.

At oral argument, the government responded it would acquiesce to GK9's request.  The government offered to provide CO Baker's "algorithm" for all clusters awarded to AMK9 and K2 in order to prove what he says in the declaration.  *See* Tr. at 62:19–63:7.  The government agreed to "go[] through the motions" of reevaluating all clusters regarding the first and second best-value tradeoffs despite having "the same inputs[ getting] the same outputs." Tr. at 59:17–23.  The government agreed to provide CO Baker's work, mentioning "it's harmless but unnecessary" if the roll-out schedule remains the *status quo*.  Tr. at 69:16–17; *see* Tr. at 63:5–7.

"[T]his court's role is not to second guess what the [procuring agency] has determined to be its needs" and defers to the agency's determination.  *Input/Output Tech., Inc. v. United States*, 44 Fed. Cl. 65, 72 n.9 (1999) (Firestone, J.); *see Palantir USG, Inc. v. United States*, 904 F.3d 980, 989–90 (Fed. Cir. 2018).  The Court may not "substitute its judgment for that of the agency," but instead looks to see if an agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085–86 (Fed. Cir. 2001).  The Court can only assume the USPS knows best on this level of program detail and operational nuance.  *See Office Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020).  The Court accordingly agrees with the USPS's proposed resolicitation plan and proposed roll-out schedule with minor deviations.  *Id.*

While the Court cannot micromanage the agency's reevaluation process or timeline, the Court recognizes the need for CO Baker to furnish his analyses.  It is not clear to the Court or the parties whether CO Baker has already reevaluated the clusters, *see* Tr. at 65:10–67:16.  The Court will not disrupt the USPS's current roll-out schedule ("Proposed Nov. Roll-Out Schedule"), ECF No. 83-1, and will not hold the agency to a certain deadline regarding a complete reevaluation of all clusters, but the USPS will provide documentation substantiating the rationale, presumably before 15 February 2022, the first K2 transition.[12]  *See* Tr. at 62:13–15 ("THE COURT:  I'm not telling you[, the USPS,] to do it before February 15th.  That's on you as far as potential harm goes.").  The USPS will need to "articulate a satisfactory explanation" for CO Baker's declaration in a full record with documentation of the reevaluation of all clusters

---

[12] GK9 requested the USPS complete the reevaluation before the rollout of [XXXXXXXXXXXXXXXXXXXX].  *See* Tr. at 64:1–14.  [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX].  *See* Proposed Nov. Roll-Out Schedule.  As such, the roll-out of the [XXXXXX XXXXXXXXXXX] are vital to the USPS's prerogative to control the package screening process and goal to facilitate development of a program expanding the number of sites with screening capabilities.

regarding the first and second best-value tradeoffs. *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc.*, 371 U.S. at 168).

## C. Conclusion Regarding the USPS's Rationale for Reevaluating Only the Clusters Awarded to MSA

The Court cannot impermissibly govern the reprocurement process, i.e., by imposing fast deadlines to what otherwise should be an exercise of agency discretion. Although GK9 disagrees with the accuracy of CO Baker's determinations, Tr. at 55:15–56:5, the Court has no reason to dispute CO Baker's findings. "To allow otherwise would give a court free reign to second-guess the agency's discretionary determinations underlying its technical ratings. This is not the court's role." *Office Design Grp.*, 951 F.3d at 1373 (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (noting the court "will not second guess" the "minutiae of the procurement process in such matters as technical ratings . . . , which involve discretionary determinations of procurement officials")). The Court, therefore, will not opine on the accuracy of CO Baker's findings but instructs the government to provide its best value analyses documentation, which fulfills GK9's request. The government characterized CO Baker's declaration as "essentially a summary of what the post-award record will address or has already addressed, just has not been provided," *see* Tr. at 44:12–16, bolstering the notion the Court cannot "interfere with the agency's broad discretion." *Office Design Grp.*, 951 F.3d at 1373; *see, e.g.*, *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1384 (Fed. Cir. 2012).

## IV. GK9's Challenge Regarding Subcontracting for Alarm Resolution Services

Alarm resolution providers implement x-ray technology for real-time communication with the responding Postal Inspector and the provider's screener for threat identification. AR 2022 at 5008 (2022 SOW Substantive Revisions). Alarm Resolution is a secondary screening—the first being the canine screening, *see supra* Section III—and also resolves the canine screening alerts. 2022 AR at 5168 (SOW–Mail Screening Alarm Resolution). The solicitation process and roll-out schedule for alarm resolution are separate from the canine screening services. The solicitation requires the offeror to adapt technology to the x-ray system on location during installation. 2022 AR at 5009 (2022 SOW Substantive Revisions). The intention of the alarm resolution "procurement is to award one contract based on a best value determination." 2022 AR at 5169 (SOW–Mail Screening Alarm Resolution). "The alarm resolution solicitation prohibited suppliers from subcontracting services to meet the scope of work; the scope of work included elements related to the delivery and installation of an alarm resolution technology solution." 30 Nov. 2022 Decl. of Jeremiah D. Baker at 7–8. The USPS decided in its sourcing strategy the "competitive procurement will be solicited only from a list of suppliers provided by the [Department of Homeland Security ('DHS')] and the [Transportation Security Administration ('TSA')]. This list includes suppliers that currently hold SAFETY Act certifications and designations from the TSA[, which provide important legal liability protections for providers of Qualified Anti-Terrorism Technologies]. While there are other x-ray screening providers in the marketplace, only those with SAFETY Act certifications and designations are permitted by the TSA to screen cargo and mail for delivery on commercial air carriers." 2022 AR at 5852 (Real-Time X-Ray Supply Management Competitive Purchase Plan). The USPS,

therefore, compiled a list of 14 suppliers to invite to bid on the alarm resolution services solicitation.  2022 AR at 5851 (Real-Time X-Ray Supply Management Competitive Purchase Plan).

### A.      The Parties' Arguments Regarding Subcontracting for Alarm Resolution Services

The Court's 23 November 2022 order recognized the Court needed more information to address issues regarding the alarm resolution services solicitation requirements.  As detailed in the 23 November 2022 order:

> according to the USPS, the alarm resolution solicitation did not accept subcontracting because "market research appeared to reveal a number of potential offerees" capable of performing the alarm resolution solicitation without subcontracting services.  The USPS ultimately only received offers from three offerors but determined the two non-MSA offerors, including [XXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX] and, thus, awarded the alarm resolution contract to MSA.  GK9 contends [XXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXX].  The dispute of fact regarding alarm resolution [XXXXXXXXXXXXXXXXXX] between the USPS and GK9 needs to be briefed, as the Court is not capable of making that determination without response and operational detail from the USPS.

23 Nov. 2022 Op. & Order at 51 (internal citations omitted).

On 30 November 2022, the government provided additional information in response to the Court's 23 November 2022 order, explaining its rationale for resoliciting the alarm resolution services without the prohibition on subcontracting.  *See* Gov't's Resp. to Court's 23 Nov. 2022 Order at 7–9.  On 7 December 2022, GK9 filed a supplemental brief objecting to the government's proposed plan for resolicitation of the alarm resolution services.  *See* GK9's Resp. to Court's 23 Nov. 2022 Order.

### 1.      The Government's Arguments Regarding Subcontracting for Alarm Resolution Services

The government argues the prohibition on subcontracting in the original solicitation yielded only one eligible offeror, so resoliciting the alarm resolution services contract to allow subcontracting will increase the number of offerors.  The government explains CO Baker found "a risk that the relationship [between [XXXXXXXXXX]] violates the prohibition on subcontracting[; GK9] was not disqualified flat out, but it was identified as a risk."  Tr. at 84:7–10.  The government continues, "But ultimately, since [GK9 wasn't] held to have the best value, it really didn't come to a point where [the USPS] had to make a call one way or the other in the original determination."  Tr. at 84:11–14.  Additionally, the government identified "[XX] had the same risk."  Tr. at 85:17.  The government maintains "[i]n its proposal, GK9 stated that it was [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

XXXXXXXXXXX].  Gov't Resp. to 26 Oct. 2022 Order at 8 (emphasis omitted).  The government provided greater detail about its exchange with GK9 regarding the proposal:

> [A] Postal Service purchasing specialist [XXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXX].  In response to the question about whether the relationship with [XXXXXXX] was a [XXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXX].

*Id.*  In justifying its need to resolicit the alarm resolution services without the prohibition on subcontracting, the government found it "necessary in order to give other prospective offerors an opportunity to bid, which will increase competition and allow the Postal Service to obtain best value. . . .  Thus, the potential for better pricing that may result from increased competition is another reason supporting the Postal Service's decision to resolicit alarm resolution services without the prohibition on subcontracting."  *Id.* at 9.

### 2.  GK9's Arguments Regarding Subcontracting for Alarm Resolution Services

GK9's arguments are two-fold:  (1) the USPS mischaracterized GK9's [XXXXXXXXX XXXXX]; and (2) the mischaracterization resulted in the arbitrary cancellation of the alarm resolution services solicitation.  First, GK9 challenges the "USPS's arbitrary conclusion that GK9 did not [XXXXXXXXXXXXXXXXXX] during the solicitation evaluation process in which GK9 was assigned a weakness.  GK9's Resp. to 26 Oct. 2022 Order at 5.  GK9 contends the [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].  *Id.* at 4.  According to GK9, the "USPS's new position [declaring of the three offers submitted, only MSA proposed services [XX XXXXXXXXXXXXXXXXXXXXXXXXX] ignores the responses to the questions it posed during the evaluation . . . ."  *Id.* at 5.  To support its contention, GK9 explains, "USPS accepted GK9's alarm resolution proposal and did not deem it non-compliant for [XXXXXXXXXXXXXXXX XXXXXXX]" so if GK9 had really proposed a [XXXXXX] and violated the solicitation's terms, the USPS would have disqualified GK9 for doing so from the beginning.  GK9's Resp. to 23 Nov. 2022 Order at 7.  GK9 adds, "Indeed, GK9 did not even get a weakness for [XXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]."  *Id.*  The USPS stated, after the Court's 23 November 2022 order, "There was a risk that GK9's [XXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXX]'"; GK9 asserts the statement conflicts "from what USPS told GK9 during the debriefing."  *Id.* at 7.  GK9 emphasizes it "does not have access to USPS's evaluation records . . . .  USPS provided a verbal debriefing without any contemporaneous writings."  *Id.*

Additionally, GK9 argues the "USPS's decision to cancel the alarm resolution solicitation lacks a rational basis." GK9's Resp. to 26 Oct. 2022 Order at 4. According to GK9, because GK9 [XXXXXXXXXXXXXXX], there is no basis for cancelling the alarm resolution solicitation. GK9's Resp. to 23 Nov. 2022 Order at 6. Ultimately, GK9 asserts the "USPS's basis for cancelling and resoliciting alarm resolution is based on the false premise that everyone other than MSA, [XXXXXXXXXXXXXXXXXXXXXXXXXX]. . . . If all other bidders [XXXXXXXXXXXXXXXXXXXX] then, instead of cancelling the solicitation, USPS should make the award to GK9." *Id.* at 8. GK9 maintains the USPS's "decision to cancel and resolicit alarm resolution is facially irrational." *Id.* GK9 also argues, "Under the [Administrative Procedure Act ('APA')] standard applicable to this case, an agency decision lacks a rational basis if it is at odds with evidence before the Court." *Id.* (citing *IAP World Servs., Inc. v. United States*, 152 Fed. Cl. 384, 397 (2021) ("'[W]hen [an agency's] determinations are contradicted by the record; no amount of deference can save them from being overturned as arbitrary and an abuse of discretion.'")).

### 3. Other Parties' Arguments Regarding Subcontracting for Alarm Resolution Services

AMK9's supplemental brief in response to the government's proposed plan following the Court's 23 November 2022 order did not address the issue regarding subcontracting for the alarm resolution services contract. *See* AMK9's Resp. to Court's 23 Nov. 2022 Order. MSA did not respond to the USPS's proposed plan after the Court's 23 November 2022 order.

### B. Analysis Regarding Subcontracting for Alarm Resolution Services

In preparing the alarm resolution services solicitation, the USPS prepared a Supply Management Competitive Purchase Plan inviting suppliers to participate in the solicitation. The Supply Management Competitive Purchase Plan listed 14 invited suppliers, including MSA, GK9, and K2. *See* 2022 AR at 5851 (Real-Time X-ray Supply Management Competitive Purchase Plan). At oral argument, GK9 argued, "[T]his is just a list of people that got invited to bid. It doesn't mean that all of them chose or any of them chose not to bid because they misread this clause in the solicitation." Tr. at 104:9–12. GK9 maintained, "[T]here's not a single bidder on that long list that protested th[e] restriction as being unduly restrictive, and two-thirds of the people [who] did bid . . . did not view [XXXXXXXXXXXXX] as [XXXXXXXXXXXXXXX XXXXXXXXXXXXX], and the government has never determined that it is." Tr. at 108:24–109:4. The government responded, "[T]here's at least the perceived risk that the other people could have been deterred by the prohibition on subcontracting." Tr. at 107:20–22. The government asserted:

> after MSA is disqualified, both of the remaining offerors have this [XXXXXXX XXXXXXXXXXXXXXXXX], and given if there's any ambiguity in it, the possibility that other potential offerors could have been deterred from making an offer, if they were going to use a [XXXXXXXXXXXXXXXXXXXXXXXXX] may have been deterred. So, *in the interest of promoting best value and full competition*, the Postal Service just decided to resolicit and remove the prohibition on subcontracting entirely.

Tr. at 85:18–86:3 (emphasis added). In other words, the government argues in the absence of a [XXXXXXXXXXXXXX] additional companies—potentially all 13 invited suppliers—would submit bids without the deterrent of a [XXXXXXXXXXXXXXXXXXXXXXXXXXX] and increase competition. *See* 2022 AR at 5851 (Real-Time X-ray Supply Management Competitive Purchase Plan); Tr. at 88:11–13 (noting if "you remove the prohibition on subcontracting, there's a possibility you get more takers").

       Two Court of Federal Claims cases are instructive in evaluating the USPS's decision to resolicit the alarm resolution services contract without a prohibition on subcontracting. *G4S Secure Integration* and *Redland* both examine an agency decision to change solicitation requirements. In *G4S Secure Integration,* Judge Somers, "having found [the Department of State ('DoS')] imposed a new requirement or term and condition midstream," analyzed what DoS was "compelled to do" after excluding plaintiff from the bidding process as a result of its changed interpretation of the solicitation requirements. *G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 412 (2022). Judge Somers determined, "'When, either before or after receipt of proposals, the [g]overnment changes its requirements or terms and conditions, the contracting officer shall amend the solicitation.'" *Id.* (quoting 48 C.F.R. § 15.206(a)) (citing *ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 192 (2018) (Wolski, J.) ("[I]t was arbitrary for the government not to amend the solicitation and accept revised quotations after its interpretation of the two requirements in question had changed.")). Judge Somers also highlighted "the FAR gives the contracting officer some discretion in deciding whether to cancel the original solicitation and that discretion should be exercised before the Court opines on its propriety." *Id.* Despite determining plaintiff's exclusion was justified, Judge Somers held "State was required to [at least] amend the solicitation when it changed its requirements or terms and conditions." *Id.* at 410–13.

       The *Redland* case from Judge Merow further analyzed whether a solicitation unduly restricted competition. *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 222 (1997). In *Redland*, the Army Corps of Engineers changed technical requirements for stones supplied for a retaining wall without any explanation for the change. *Id.* The Corps produced a memorandum allowing stone compliant with a less stringent standard, but then issued a solicitation for stone meeting a much higher standard. *Id.* Judge Merow concluded:

        The Corps *did not articulate a rational connection between its needs* with respect to the Poplar Island project *and its decision* to use [the higher standard] prior to issuing the construction specifications . . . . [The memoranda provided by the Corps did not provide] a logical link between the Corps' stated needs and its decision to depart from the guidance [allowing less stringent standards] and require stone [meeting the higher standard].

*Id.* at 231–32 (emphasis added). Judge Merow was particularly attentive to the Corps' decision as it relates to competition. Judge Merow found while "[t]he Corps is certainly entitled to depart from previous practice and the nonbinding engineering guidance contained in [the Corps' memorandum requiring stone to be compliant with a lower standard], . . . it must provide a rational basis for doing so." *Id.* at 234. Judge Merow emphasized the necessity of a rational

basis "is especially true in this case since the departure restricts competition and may result in at least several million dollars of increased costs."  *Id.*

The USPS's decision to resolicit alarm resolution services follows the logic of *G4S Secure Integration* and *Redland*.  As articulated in *G4S Secure Integration*, the agency is entitled to change its opinion on solicitation requirements so long as the contracting officer amends the solicitation accordingly.  161 Fed. Cl. at 410–13.  In this case, the USPS decided to amend the alarm resolution services resolicitation by cancelling the initial request.  Judge Somers in *G4S Secure Integration* noted "the FAR gives the contracting officer some discretion in deciding whether to cancel the original solicitation and that discretion should be exercised before the Court opines on its propriety."[13]  *Id.* at 412 (citing 48 C.F.R. § 15.206(e)) ("If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.").  Following *Redland*, the government provided an express rationale for its decision to cancel the solicitation.  The government offered in CO Baker's declaration:

> *The Alarm Resolution Solicitation did not allow subcontracting because our market research appeared to reveal a number of potential offerees.  However, only three offers were received, and it appeared that only MSA's offer [XXXXXXXXXXXX XXXXXXXXXXXXXXX].  The other two non-MSA offers [XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] in order to meet the scope of work.  When we reached out to the other offerors to question whether their offers included [XXXXX] we were told that [XXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX].   Based on the responses received, we concluded that the use of the [XXXXXXXX] presented risks that the offers violated the [XXXXXXXXXXXXXXX].*
>
> *Based upon the responses received replacing the alarm clearing services will require us to resolicit these services to allow for subcontracting because the most recent re-solicitation only received one qualified offer.*

31 Oct. 2022 Decl. of Jeremiah D. Baker ¶¶ 14–15.

The *Redland* court emphasized the Corps' decision to change technical requirements restricted competition.  *See Redland Genstar, Inc.*, 39 Fed. Cl. at 231.  The USPS's decision to resolicit alarm resolution services without the prohibition on subcontracting results in greater competition.  GK9 and [XXXXXXXXXXXXXXX] may or may not constitute [XXXXXXXX],[14] but the Court is not in a position to determine their relationship.  GK9's Resp.

---

[13] As discussed in the Court's 23 November 2022 order, while the FAR is not directly applicable to the USPS, it is persuasive authority.  *See* 23 Nov. 2022 Op. and Order at 41 ("The FAR is not directly applicable to the USPS; however, as [USPS personnel] found, the FAR is 'instructive' and 'persuasive.'").

[14] The USPS does not have a standard on subcontracting.  Tr. at 97:16-98:14 ("[THE GOVERNMENT]:  So, I don't have a particular definition of what subcontracting is that the Postal Service was relying on here or not.  They're not

to 23 Nov. 2022 Order, Ex. A at 7 (24 Oct. 2022 Letter from GK9 to SDRO); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (holding a court may not "substitute its judgment for that of the agency")). Irrespective of [XXXXXXXXXXXXX XXXXX], the Court is not inclined to restrict competition. *See Parcel 49C Ltd. P'ship v. United States*, 130 Fed. Cl. 109, 125–27 (2016) (Griggsby, J.) (analyzing whether an agency's decision to include a requirement in the solicitation unduly restricted competition, and, thus, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). CO Baker's decision to amend the solicitation to allow subcontracting was not irrational. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("[T]he courts have recognized that contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.") (citations and internal quotations omitted).

## C.     Conclusion Regarding Subcontracting for Alarm Resolution Services

The USPS has provided a rational basis for its decision, notably to incentivize more offerors for the alarm resolution contract. *See Axiom Resources Mgmt. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009) ("A court evaluating a challenge on the [grounds of lacking a rational basis] must determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.") (internal quotations omitted). As the government explained, with MSA disqualified, "the Postal Service elected to just resolicit and remove the prohibition on subcontracting [to] make sure that anyone who may have been deterred from bidding who may have had a similar relationship with some other software vendor would not be deterred [and to] allow Postal Service to maximize the chance of full competition in getting best value." Tr. at 84:15–21. *G4S Secure Integration* underscores the need for a revised solicitation when an agency changes its requirements or the interpretation of its requirements. 161 Fed. Cl. at 410–13. In other words, removing the restriction could increase competition considering the group of potential offerors *invited to participate* in the alarm resolution solicitation was almost five times the number of offerors who *actually participated*. *See* AR at 5851 (Real-Time X-ray Supply Management Competitive Purchase Plan). A perceived risk potential offerors were deterred by the prohibition on subcontracting is reasonable considering [XXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXX], *see* Tr. at 85:11–13, and MSA [XXXXXXXXXXXXXX XXXXXXXXXXXXXXX], *see* Tr. at 85:5–7. Judge Merow's determination in *Redland* resulted from the notion the Court "must ensure that the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* at 231 (internal citations omitted). The Court finds the USPS provided a rational basis for its choice to resolicit the alarm resolution services solicitation

---

pointing to anything, and I don't have a separate one since, again, even if the FAR may delineate it, but we are not subject to the FAR. THE COURT: So do the SP&Ps have a standard for subcontracting? [THE GOVERNMENT]: We haven't found one. THE COURT: So, there's no standard [CO] Baker is holding this to? [THE GOVERNMENT]: Well, it's just general understanding of what a subcontracting relationship is. THE COURT: What is the definition of subcontracting? [THE GOVERNMENT]: There's, again, no explicit definition given here. So, it's difficult to say precisely, but certainly things like the FAR could be instructive on what that means. But in terms of, you are the prime contractor, is the subcontractor responsible to you, the prime has the contractual relationship with the principal and then the subcontractor will report to the prime. Those are all aspects of what a traditional subcontracting relationship would be. And that is at least perceived to be a risk.").

without a prohibition on subcontracting and agrees alarm resolution services should be resolicited.  *See Garufi*, 238 F.3d at 1333.

## IV.  **MSA's Motion to Stay the Court's 23 November 2022 Order**

### A.  **The Parties' Arguments Regarding MSA's Motion to Stay the Court's 23 November 2022 Order**

#### 1.  **MSA's Arguments Regarding its Motion to Stay the Court's 23 November 2022 Order**

On 1 December 2022, MSA filed a second motion for a stay or injunction pending appeal, ECF No. 90.  MSA acknowledged it "had previously filed a motion for stay pending appeal after it appealed the Court's October 26, 2022 order," but "the Court determined MSA's motion for stay was moot because it appealed an order that purportedly did not contain any actual injunctive relief."  *Id.* at 2; *see* MSA's First Mot. for a Stay, ECF No. 79; 23 Nov. 2022 Op. & Order at 67.  MSA contends its renewed motion for a stay pending an appeal is valid because "[w]here the Court's 26 October 2022 Order said the Court 'may potentially disqualify MSA from participation' in the resolicitations, the Court's [23 November 2022] Order is unequivocal that MSA is permanently enjoined from participation in the 2022 Solicitations: 'The Court has no choice but to enjoin MSA and ask the USPS to reevaluate the solicitation in a manner that does not violate its Supplying Principles and Practices.'"  MSA's Reply for Second Mot. for a Stay at 2–3 (citing 23 Nov. 2022 Op. & Order at 3) (emphasis omitted).  MSA maintains "[t]he only issues left unresolved by the Order are the concerns related to the downstream effects of the Order."[15]  *Id.* at 3.  MSA adds, "The only thing left for the Court to do with respect to the case on the merits against MSA is to execute its judgment."  *Id.* at 6.

MSA contends the Court enforcing its order before MSA's appeal is decided "will likely lead to a procedural morass, an irremediable deprivation of MSA's protest rights, harm to the public fisc[al affairs], and risk to the public safety."  MSA's Second Mot. for a Stay at 6.  MSA asks the Court to "stay its Order and issue an injunction preserving the *status quo* pending MSA's appeal to the Federal Circuit because the Order is based on novel applications of the relevant law thus presenting a 'substantial case' to the appellate court."  *Id.* at 3.  Specifically, MSA argues the issues "of first impression and/or present close questions" because:  (1) "there is no precedent on the question of whether an incumbent advantage gained from a services contract purportedly tainted by an OCI is immitigable"; (2) there is precedent the FAR's "design and development" biased ground rules exception applies to service contracts as well as product contracts; and (3) "there is no precedent for the Court's conclusion USPS's SP&Ps provide less flexibility for an agency to mitigate both biased ground rules and unequal access to information OCIs than the FAR."  *Id.* at 3–4.  MSA also argues the Court erroneously "overlooks and fails to review or give discretion to the multiple other mitigation tactics employed by the USPS and instead primarily relies on an offhand statement by counsel for the Government that 95 percent

---

[15] MSA, specifically, contends the remaining injunctive relief concerns, *supra* Section III, "are ancillary to the sole relief sought by AMK9 and GK9:  exclusion of MSA."  MSA's Reply for Second Mot. for a Stay at 3.  MSA further adds "these concerns GK9 has about the USPS's proffered course of action are actually more in the nature of post-award challenges to how USPS conducted its evaluation of proposals as part of the 2022 procurements."  *Id.* at 4.

of the content of the 2022 Solicitations is the same as the 2020 Solicitation even though the record does not show any comparison between the two." MSA's Reply for Second Mot. for a Stay at 9. MSA further adds, "[t]he Court's failure to discuss or give proper discretion to . . . Agency determinations constitutes error presenting a close case." *Id.* at 10.

### 2.   The Government's Arguments Regarding MSA's Motion to Stay the Court's 23 November 2022 Order

The government asserts "MSA's appeal is premature because the Court has not issued an order setting forth the terms of the injunctive relief it intends to grant," and "the Court should deny MSA's motion as premature." Gov't Resp. to MSA's Second Mot. for a Stay at 1, 5. The government explains, "In its November 23, 2022 order, the Court gave a full explanation of its holdings regarding the parties' motions for judgment on the record." *Id.* at 3. The government adds, "Although the Court stated that it would grant injunctive relief in favor of AMK9 and GK9, the precise terms of the injunction remain open and are the subject of supplemental briefing ordered by the Court in the same November 23, 2022 order. Accordingly, MSA's notice of appeal and motion for stay pending appeal are premature." *Id.* at 6. The government reasons "MSA's purported appeal is likely baseless at this time as no injunctive relief or final judgment have been made and therefore jurisdiction remains with this Court." *Id.* at 4. The government continues, "As it appears that the Court intends to issue an additional order setting out more details about the specifics of the injunctive relief, the Court's November 23, 2022 order does not constitute an injunction that would entitle MSA to file an immediate notice of appeal." *Id.* at 5. Specifically, the government highlights, "The Court's November 23, 2022 order also did not designate its opinion as an appealable interlocutory order pursuant to 28 U.S.C. § 1292(d)(2) and RCFC 54(b), nor did MSA request to have the Court designate it as such." *Id.* at 6 n.3. The government finally notes it "takes no position on the merits of MSA's motion at this time other than to state that it should be denied as premature," but "if the Court were to decide to stay its injunction, once issued, the Court should require MSA to post a bond sufficient to secure the opposing parties' rights[,] which MSA has effectively estimated at $15 million." Gov't Resp. to MSA's Second Mot. for a Stay at 8–9.[16]

### 3.   GK9's Arguments Regarding MSA's Motion to Stay the Court's 23 November 2022 Order

GK9 agrees with the government, noting "MSA's appeal is still premature." GK9's Resp. to MSA's Second Mot. for a Stay at 1–2. While GK9 opposes a blanket stay of the Court's November 23, 2022 order, it "suggest[s] that the Court's final judgment in this case should fashion injunctive relief to prevent work on the 2022 awards from beginning until after (a) the SDRO decides the pending post-award disagreements and (b) plaintiffs have a reasonable

---

[16] At oral argument, the government expounded on its position documented in its response to MSA's motion to appeal, which was "no position on the merits of MSA's motion at this time other than to state that it should be denied as premature," noting MSA "should dismiss this appeal and then file another notice of appeal after the Court issues final judgment." Gov't Resp. to MSA's Second Mot. for a Stay at 6–7; Tr. at 123:15–17. The government added: "presumably, after the Court issues its final judgment, [the government] anticipate[s] MSA will file their third notice of appeal, and they should dismiss the current notice of appeal at that time. They have the right to ask the Court to stay its appeal after they file that one under Rule 62(d). [The government doesn't] think [the case is] there yet, but they have the right to ask." Tr. at 123:7–14.

opportunity to request preliminary injunctive relief from the Court." *Id.* at 5. GK9 summarizes the Court's two previous orders: "The Court's November 23 order is substantially more detailed and longer than the October 26 version. However, just as the Court's earlier order contemplated additional briefing and a further order, so too does its most recent opinion." *Id.* at 2 (internal citations omitted). GK9 adds, "The Supreme Court says that an order is final only when it ends the litigation and leaves nothing to do except execute a judgment." *Id.* at 2 (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Ultimately, GK9 asserts "the Court should deny MSA's motion because it cannot show the likelihood of success on the merits on appeal" and "[t]he Federal Circuit would have to upend that long-standing principle to allow MSA to compete for award under the program it helped to develop while expecting a sole source award." *Id.* at 3.

### 4. AMK9's Arguments Regarding MSA's Motion to Stay the Court's 23 November 2022 Order

AMK9 notes, "In hopes of hanging on to as much of its work as possible—for as long as possible—MSA asks the Court to stay its order pending MSA's appeal" because "MSA has profited immensely from performing work for more than two years despite its disqualifying [OCI]. MSA will continue to benefit through at least April for canine screening, and longer for alarm resolution." AMK9's Resp. to MSA's Second Mot. for a Stay at 1. AMK9 argues, "The Court should deny MSA's motion because it does not meet the requirements for the extraordinary and drastic remedy of a stay pending appeal." *Id.* Specifically, AMK9 refutes MSA's claim "[t]here is no precedent on the question of whether an incumbent advantage gained from a services contract purportedly tainted by an OCI is immitigable[,]" and clarifies "[t]he Court held that the 'government fails to justify its abbreviated mitigation strategy—only amending one evaluation criterion of four.'" *Id.* at 3 (citing MSA's Second Mot. for a Stay at 3; 23 Nov. 2022 Op. & Order at 30). AMK9 adds, "[T]he Court made clear that it '*does not* hold a service contract "tainted" by biased ground [rules] can never be mitigated'; but '*in this case*, nothing could have been done to mitigate MSA's biased ground rules OCIs.'" *Id.* (citing 23 Nov. 2022 Op. & Order at 43–44) (emphasis is original). AMK9 concludes, "This ruling does not stand for a novel proposition of law." *Id.* Next, AMK9 refutes MSA's belief "the Court erred in finding that the FAR OCI design and development exception generally applies to products contracts." *Id.* at 4 (citing MSA's Second Mot. for a Stay at 3). AMK9 clarifies "the Court found that the FAR did not apply to this USPS procurement[, and] Court further held that the SP&Ps do not contemplate a development and design exception." AMK9's Resp. to MSA's Second Mot. for a Stay at 4. AMK9 concludes "the Court's finding that the FAR contains an exception for design and development work while the SP&Ps do not is not novel— the support comes from the plain text of the relevant statutory and regulatory documents." *Id.* (citing 23 Nov. 2022 Op. & Order at 40). Finally, AMK9 refutes MSA's statement "[b]y its very nature, the overruling of an agency is a matter that creates a "substantial case" due to the deference that is supposed to be afforded to agency procurement decisions." *Id.* (citing 23 Nov. 2022 Op. & Order at 16). AMK9 concludes following MSA's logic, "every protest ruling against the government would be a 'substantial case.'" *Id.* In conclusion, AMK9 agrees with the government, requesting "if [the Court] grants MSA's motion, MSA be required to post bond pursuant to RCFC 62(d), (h)." *Id.* at 10.

### B.     Legal Standard for a Stay Pending Appeal

Rule 62(d) of the RCFC states, "While an appeal is pending from an interlocutory order or final judgment . . . the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Such relief, however, "is an 'extraordinary and drastic remedy,' which is not granted lightly."  *G4S Secure Integration LLC v. United States*, 159 Fed. Cl. 249, 254–55 (2022) (Hertling, J.) (quoting *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016) (Wolski, J.)); *see also RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015) (Bruggink, J.) ("An injunction pending appeal is an extraordinary remedy and will not be lightly granted.").  The party moving for a stay "carries the burden of establishing the propriety of an injunction pending appeal . . . ."  *Telos Corp.*, 129 Fed. Cl. at 575.  The imposition of such relief pending appeal is an exercise of judicial discretion that depends upon the circumstances of the particular action.  *See ePlus, Inc. v. Lawson Software, Inc.*, 431 F. App'x 920, 920 (Fed. Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009) (noting the decision to stay a permanent injunction pending appeal "is not a matter of right [b]ut instead an exercise of judicial discretion")).

### C.     Analysis Regarding MSA's Motion to Stay the Court's 23 November 2022 Order

MSA's motion seeks both a stay of this court's judgment and entry of an injunction pending resolution of its appeal by the Federal Circuit.  *See* MSA's Second Mot. for a Stay.  RCFC 62(d) states, "While an appeal is pending from an interlocutory order or final judgment . . . the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  The government explained its understanding "the November 23rd order was not a final judgment and . . . even though it indicated that the Court would be issuing an injunction, [the order] didn't say the terms of the injunction, so it did not entitle MSA to file an appeal under . . . [28 U.S.C.] 1292(c)(1)[,]" which confers exclusive jurisdiction of an appeal from an interlocutory order to the Federal Circuit. Tr. at 33:22–34:2.  The government concluded "the Court ha[s] not yet issued the injunction and, therefore, MSA's appeal and its motion to stay [are] premature."  Tr. at 33:11–13.  The government further explained although the Court would retain jurisdiction to decide MSA's motion for a stay under Rule 62(d), it would lose jurisdiction after granting MSA's Rule 62(d) motion if the injunction was final.  *See* Tr. at 121:16–122:8.  The Court has not issued an order setting forth the terms of the injunctive relief it intended to grant, considering the Court's 23 November 2022 order specifically notes "the Court is not capable of making [an injunction] determination without response and operational detail from the USPS."  *See* 23 Nov. 2022 Op. & Order at 51.  To be even clearer, the Court concluded its previous order with instructions:  "The government **SHALL FILE** additional briefing on or before **30 November 2022** concerning the reevaluation issues . . . .  If desired, any plaintiff may respond on or before **7 December 2022**."  *Id.* at 68 (emphasis in original).[17]  The Court, therefore, left injunction relief open and subject to

---

[17] As with the Court's 26 October 2022 order, MSA failed to respond to the Court's 23 November 2022 order.  *See* 23 Nov. 2022 Op. & Order at 65 ("The USPS filed its supplemental statement with a declaration from CO Baker detailing how the contracts would move forward 'in the event' MSA was disqualified.  GK9 filed its response expressing its concerns with the USPS's proposed plan.  MSA did *not* file a response to the USPS's supplemental statement.") (internal citations omitted).  When pressed why MSA failed to file a response, MSA, said "[it] didn't

supplemental briefing in order to inform *this* opinion.  If the Court's 23 November 2022 order was final, the Court would not be able to opine on the USPS's rationale for reevaluating only the clusters awarded to MSA and not the clusters awarded to K2 and AMK9 or the factual dispute between the USPS and GK9 regarding the alarm resolution vendor versus subcontractor issue. *See Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 572 (2000) ("[T]his court may take this interest into account not only in deciding whether injunctive relief is appropriate, but also in crafting appropriate injunctive relief.")

The Court also identifies MSA's motion for a stay as unduly broad.  In *Hall v. Hall*, the Supreme Court determined individual claims of a consolidated case retain their separate characteristics. 138 S. Ct. 1118, 1122 (2017).  A unanimous Court held civil actions consolidated under Federal Rule of Civil Procedure 42(a) retain their separate identities, so a final decision in one action is immediately appealable by the losing party, even if other actions in the consolidated proceeding remain. *Id.* at 1131; *see also* Order Consolidating Cases, ECF No. 19 (consolidating cases under RCFC 42(a)).  Under *Hall v. Hall*, "a judgment completely resolving one of several consolidated cases was an immediately appealable final decision."  138 S. Ct. at 1128.  MSA's appeal and stay requests are too broad, however, because they encompass other plaintiffs' injunctive relief.  MSA is not asking for a stay relating to its motion for judgment on the administrative record, but instead to stay the relief accompanying GK9's and AMK9's motions for judgment on the administrative record.  Tr. at 126:4–11 (GK9 stating, "[T]here is no final judgment or interlocutory order to stay in our two separate cases[, and] what [MSA is] asking for is primarily in [GK9 and AMK9's] separate cases and not [the] original consolidated case.").  The Court agrees given "[t]here's not one case with three plaintiffs [but] there's three cases that have been consolidated," and the 23 November 2022 order is not a "final judgment, certainly as to Plaintiffs' claims that have been brought in the cases that [GK9 or AMK9] filed."  Tr. at 118:13–23 (quoting GK9).

MSA also argues the motion for a stay is necessary because it is suffering immediate harm as a result of the 23 November 2022 order.  MSA's requests in its motion for a stay are two-fold:  (1) a pause on the rollout; and (2) a pause on the reevaluation and award of the sites that are currently awarded to MSA.  Tr. at 20:3–16.  The Court addresses each in turn.

First, the government confirmed at oral argument any pause or change to the USPS's rollout schedule is a matter of agency contract administration; "the Postal Service made the decision, as a matter of contract administration, to change the order of the rollout, because given the likelihood that there was going to be the injunction against using MSA, to accommodate having time to roll things out in an orderly fashion, they changed the order of the rollout.  It wasn't a change in awardees."  Tr. at 16:12–19.  The government reiterated, "[N]o one is getting a different award than they would have gotten otherwise."[18]  Tr. at 16:22–23.  The government restated, the "Postal Service, under contract management, can change the order providing 30 days' notice for any reason or no reason since they are awards and sites under their new contract," Tr. at 26:21–27:1, and MSA "acknowledge[d] the Post Office's right to reorder things

---

think that a response . . . would be appropriate."  Tr. at 23:9–13.
[18] For example, the government noted, "The fact [the USPS is] rolling out the sites that were awarded to AMK9, that isn't because of the injunction.  That's just because those sites were awarded to AMK9 under the resolicitation under the remand from the previous case."  Tr. at 28:23–29:2.

however they want as a matter of contract administration," Tr. at 36:13–16. The roll-out schedule, therefore, changed in order but not substance as a result of the USPS's contract administration, not a court directive.

Second, MSA posits "even if we win our appeal, there's no mechanism for us to get our contract back." Tr. at 135:3–5. As the government succinctly responded, "[T]he Court can make an order and do exactly what [MSA] is saying." Tr. at 135:24–25. Further, MSA suggests "the damage to the other parties is minimal"—evident in the other parties not pursuing injunctions in 2020—because "all [the stay] is doing is it's potentially moving out their start dates . . . a few months, perhaps." Tr. at 131:4–12. The government confirmed in 2020, national security was a concern the USPS needed services in airports as quickly as possible,[19] but, in 2022, transitioning from one provider to another is not a national security issue. Tr. at 131:10–132:21. The government, therefore, placated both of MSA's harm concerns; the Court is not persuaded immediate harm would occur. *Beard v. United States*, 451 F. App'x 920, 921 (Fed. Cir. 2011) (holding plaintiff "bears the burden of showing the circumstances justify an exercise of the court's discretion"); *see Newimar, S.A. v. United States*, 163 Fed. Cl. 240 (2022) ("Plaintiff fails to provide any meaningful evidence to support its contention that it would cease to exist without a stay pending appeal, and, in fact, evidence supports the contrary. Instead, Plaintiff offers conclusory statements and bald assertions by its counsel, without further elucidating how the alleged harms are immediate or certain."); *Harmonia Holdings Grp., LLC v. United States*, 147 Fed. Cl. 749, 754 (2020) ("[T]his [c]ourt has previously held that 'loss of a contract is not enough without more to show irreparable harm or warrant a stay pending appeal.'") (quoting *Algese 2 s.c.a.r.l. v. United States*, 128 Fed. Cl. 7, 12 (2016)).

### D.     Conclusion Regarding MSA's Motion to Stay the Court's 23 November 2022 Order

The Court characterizes MSA's motion for a stay of the Court's 23 November 2022 and entry of an injunction pending resolution of its appeal by the Federal Circuit as premature, overly broad, and not warranted given a lack of immediate harm—and denies it as such. *See, e.g., Contessa Food Prod., Inc. v. ConAgra, Inc.*, 117 F. App'x 731, 731 (Fed. Cir. 2004) ("A review of the district court docket sheet reflects that the district court has not yet entered final judgment. Therefore, we conclude that the appeal is premature and dismiss for lack of jurisdiction.").

### V.     Conclusion

The Court finds this opinion constitutes a final judgment.[20] The Court issued the November order and invited the government to propose details regarding the resolicitation

---

[19] In fact, AMK9 confirmed in 2020 "the security concerns that the government had expressed made it worth withdrawing our request for a [temporary restraining order ('TRO')] at that time in order to expedite proceedings and allow everything to move as quickly as possible." Tr. at 134:10–14. The TRO, therefore, was never fully considered by the Court.

[20] At oral argument, all parties agreed this order would conclude the 2022 pre-award protest. Tr. at 143:12–145:21. The parties clarified what motions are still pending in the related litigation, Case No. 20-1614:
- AMK9's motion for a TRO and preliminary injunction, ECF No. 21;
- AMK9's motion seeking an order requiring the government to complete the administrative record and leave to file a supplemental brief, ECF No. 149;

process; the other parties were all given the opportunity to respond to the government's proposed plan. After addressing all the resolicitation issues, the Court **ADOPTS** the USPS's proposed resolicitation plan for both canine screening and alarm resolution services and 22 November 2022 proposed roll-out schedule, ECF No. 83-1, with the minor deviations discussed *supra*. Based on the 23 November 2022 opinion and order and this order, the Court **SUSTAINS** AMK9 and GK9's pre-award bid protests, Case Nos. 22-620 and 22-630, respectively. For the foregoing reasons, the Court **DENIES** MSA's renewed motion for a stay or injunction pending appeal of the Court's 23 November 2022 Order, ECF No. 90. The Court also **STRIKES** MSA's "supplemental motion in support of its motion for stay pending appeal," ECF No. 105, as deficient; MSA should have filed a motion for leave to file such a document. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

- the government's motion to dismiss, ECF No. 132; and
- MSA's motion to dismiss and memorandum in support of the government's motion to dismiss, ECF No. 133.

Tr. at 144:22–147:20. The parties agreed at oral argument, however, the only issues unresolved are bid preparation and proposal costs and attorney's fees. Tr. at 144:9–17. *See generally supra* note 9.