# In the United States Court of Federal Claims

Nos. 22-573, 22-620, 22-630
(Filed:  7 November 2024[*])

```
****************************************
MICHAEL STAPLETON ASSOCIATES,          *
LTD,                                   *
                                       *
              Plaintiff,               *
                                       *
v.                                     *              No. 22-573
                                       *
THE UNITED STATES,                     *
                                       *
              Defendant,               *
                                       *
and                                    *
                                       *
AMERICAN K-9 DETECTION                 *
SERVICES, LLC,                         *
                                       *
              Defendant-Intervenor.    *
****************************************
****************************************
GLOBAL K9 PROTECTION GROUP,            *
LLC,                                   *
                                       *
              Plaintiff,               *
                                       *
v.                                     *              No. 22-620
                                       *
THE UNITED STATES,                     *
                                       *
              Defendant.               *
                                       *
****************************************
****************************************
AMERICAN K-9 DETECTION                 *
SERVICES, LLC,                         *
                                       *
              Plaintiff,               *
```

---

[*] This Order was initially filed under seal on 1 November 2024 under the protective order in this case.  The Court provided the parties the opportunity to submit proposed redactions at or before 5:00 p.m. (ET) on 6 November 2024. As the parties did not propose redactions, this Order is now being reissued publicly in its original form.

```
                                    *
v.                                  *          No. 22-630
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*****************************************
```

     *Walter Brad English*, Maynard Nexsen PC, with whom was *Emily J. Chancey*, all of Huntsville, AL, for plaintiff Global K9 Protection Group, LLC.

     *Ryan Christopher Bradel*, Ward & Berry PLLC, with whom was *Nicolas L. Perry*, all of Washington, D.C., for plaintiff Michael Stapleton Associates, Ltd.

     *Jana Moses*, Lead Attorney with whom were *Steven J. Gillingham*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, and *Joshua J. Hofer*, United States Postal Service, all of Washington, DC, for defendant.

     *Daniel Jonathan Strouse*, Cordatis LLP, with whom was *Joshua D. Schnell*, all of Arlington, VA, for defendant-intervenor American K-9 Detection Services, LLC.

## OPINION AND ORDER

**HOLTE, Judge.**

     In June 2022, plaintiffs Michael Stapleton Associates, Ltd. ("MSA"), Global K9 Protection Group, LLC ("GK9"), and American K-9 Detection Services, LLC ("AMK9"), brought this consolidated pre-award bid protest against the United States Postal Service ("USPS") challenging USPS's award of a contract for canine explosive detection and alarm resolution services. Since its original award in September 2020, and as the Court recently summarized in related case *Global K-9*, this contract was re-awarded and re-solicited several times over the last four years, and during that time, the Court ruled on a myriad of issues. *See Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. 523, 526–27 (2024) ("[F]our years, two remands with related remand extensions, two formal re-solicitations, two injunctions, three re-awards splitting the contract into two procurements, and approximately 34 total dog years."). MSA's current Motion for Relief now relates to only the canine explosive detection portion of the contract, as MSA is currently performing the alarm resolution services portion of the contract. *See id.* at 529.

     On 23 November 2022 and 31 January 2023, the Court issued orders in this case on MSA's, GK9's, and AMK9's pre-award protest, and, of relevance here, enjoined MSA from participation in an upcoming resolicitation of the contract due to an organizational conflict of interest. On 20 May 2024, the United States Court of Appeals for the Federal Circuit issued a decision affirming in part and reversing in part the Court's January 2023 Order in this case, ECF No. 113. *See Michael Stapleton Assocs., Ltd. v. United States*, No. 2023-1273, 2024 WL

2266341 (Fed. Cir. May 20, 2024). Specifically, the Federal Circuit reversed this Court's decision with respect to MSA's participation in the resolicitation of this contract and entry of injunction against MSA, while affirming with respect to the other challenged terms of the resolicitations. *Id.* The only remand instruction provided by the Circuit was the last paragraph of its Opinion. *See* 10 Oct. 2024 Oral Arg. Corrected Tr. ("Tr."), ECF No. 141, at 8:17–9:1 ("[THE COURT:] [J]ust to understand the Federal Circuit's decision, the remand is the last paragraph noted with Roman Numeral III that says, 'We reverse the decision of the [Court of Federal Claims] with respect to MSA's participation in the 2022 solicitations and its entry of an injunction against MSA, and we affirm with respect to the other challenged terms of the solicitations.' That's the only instruction. [MSA:] That's correct, Your Honor.") Based on the Federal Circuit's Opinion and Mandate, and despite the instructions—or lack thereof—to the Court, MSA filed its Motion for Relief, requesting the Court: (1) "[t]ransition the five regional clusters [at issue in the contract] awarded to MSA under the 2022 3PK9 Solicitation back to MSA according to a reasonable schedule that considers operational realities but without undue delay; and (2) [r]eevaluate proposals, including MSA's, for the Central East and ISC clusters and issue a new award decision in following that reevaluation." MSA's Mot. for Relief at 20, ECF No. 127. In the alternative, MSA seeks relief under Rule 60 of the Rules of the Court of Federal Claims ("RCFC"), despite "posit[ing] that Rule 60(b)(6) is not the best avenue for MSA to seek relief, since this Court's judgment of November 22, 2022 has completely dissolved such that there is no longer a 'judgment' from which this Court could grant relief." *Id.* at 19.[1] For the following reasons, the Court **DENIES** MSA's Motion for Relief following the Federal Circuit's decision.

## I.    Factual Background & Procedural History[2]

This case relates to additional bid protests filed before this Court: *American K-9 Detection Services, LLC v. United States*, 155 Fed. Cl. 248 (2021) and *Global K9 Protection Group, LLC v. United States*, 169 Fed. Cl. 116 (2023), which are both now closed.

### A.    The Court's November 2022 and January 2023 Orders[3]

The Court previously issued decisions concerning the USPS solicitations in this consolidated pre-award bid protest by MSA, AMK9, and GK9. *See Michael Stapleton Assocs., Ltd. v. United States* (*MSA I*), 163 Fed. Cl. 297 (2022); *Michael Stapleton Assocs., Ltd. v. United States* (*MSA II*), 164 Fed. Cl. 455 (2023).

---

[1] In addition to filing for relief in this case, MSA also sought relief in related case *Glob. K9 Prot. Grp., LLC v. United States*, No. 23-210, filing a Motion to Reopen the Case for Temporary Restraining Order and Preliminary Injunction and Second Amended Complaint. *See Glob. K9 Prot. Grp., LLC v. United States*, No. 23-210 (Fed. Cl. June 10, 2024), ECF Nos. 148, 149. MSA, however, filed a notice of voluntary dismissal without prejudice in the related case, *Glob. K9 Prot. Grp., LLC v. United States*, No. 23-210, to withdraw its Motion to Reopen Case, ECF No. 160, which the Court granted, *see* 12 July Order, ECF No. 161.

[2] For full background of the facts, procedural history, and issues of this consolidated pre-award bid protest, this Opinion and Order must be read in conjunction with the Court's 23 November 2022 Opinion and Order, ECF No. 89, and 31 January 2023 Order, ECF No. 109.

[3] The Court provided additional background related to the injunction of MSA in its April 2024 Order in *Global K9. Glob. K9*, 170 Fed. Cl. at 526–27.

In the Court's 23 November 2022 Opinion and Order, the Court addressed the pre-award bid protest complaints by AMK9, GK9, and MSA appealing the supplier dispute resolution officials' decision on the disagreements with the 2022 Solicitations. *See MSA I*, 163 Fed. Cl. at 313. Both AMK9 and GK9 argued for the disqualification of MSA from the solicitation. *Id.* at 316–17. Specifically, AMK9 challenged four aspects of the 2022 resolicitation: (1) the insufficiency of USPS's May 2022 modification of the valuation criteria; (2) USPS's failure to disqualify MSA was arbitrary and capricious in light of MSA's tainted incumbent advantage; (3) USPS's conclusion that MSA no longer had a biased-ground-rules organizational conflict of interest was arbitrary and capricious; and (4) USPS allowed a USPS employee—who previously shared information with MSA—to play a role in the 2022 resolicitation process, which was unreasonable and therefore arbitrary and capricious. *See id.* at 316–17. From GK9's view, in modifying the 2022 resolicitations and allowing MSA to compete in the resolicitations, USPS acted arbitrarily and capriciously. *See id.* at 317 (detailing GK9's specific challenges). MSA separately challenged: (1) USPS's separation of the canine detections services and alarm resolutions as arbitrary and capricious; (2) the language of the 2022 resolicitation as ambiguous; and (3) USPS's May 2022 update to the evaluation criteria. *See id.* at 317–18 (detailing MSA's specific challenges).

While the Court considered the parties' motions for judgment on the administrative record, USPS awarded to MSA, AMK9, and a third-party service, the contract for the 2022 resolicitations of the canine detection services, divided by geographic regions, while the entirety of alarm resolution contract went to MSA. *See id.* at 313–14. The Court then considered the protest's challenge to the terms of USPS's 2020 resolicitation and 2022 resolicitation, without reconsidering the protest filed after the bid was awarded and contractors were selected. *See id.* The Court found several of USPS's actions to be arbitrary and capricious. First, the Court determined USPS's allowance of an USPS employee—who improperly shared information with MSA relevant to the 2020 solicitation—to have an ongoing role in the 2022 resolicitation process was arbitrary and capricious. *See id.* at 325. Although the employee in question was only involved in the "lessons learned" discussions and was not a member of the technical evaluation team, the Court concluded the inclusion of the employee violated USPS's own purpose for corrective action. *See id.* Second, the Court considered USPS's rationale for its mitigation strategies as to MSA's alleged organizational conflicts of interest. *Id.* at 333. In doing so, the Court analyzed the May 2022 modifications and determined USPS's mitigation actions could not rationally be deemed adequate. *See id.* at 330–32 (detailing how the mitigation strategies were insufficient). Third, in analyzing the biased ground rules, the Court also determined USPS could not rationally determine there was no longer an unfair advantage to MSA. *See id.* at 342, 345 (detailing the analysis of the ground rules). The Court ultimately found USPS could not rationally determine MSA did not possess an unfair advantage because MSA's incumbent advantage continually persisted from the pilot program all the way through the resolicitation. *See id.* at 339. The Court held USPS's actions therefore prejudiced AMK9 and GK9 due to the unresolved organizational conflict of interest, *id.* at 345, and, in balancing the injunction factors, enjoined MSA from participating in the 2022 resolicitation, *id.* at 354.

After making a "'determination on the motions and generally agree[ing] with the USPS's proposed plans to phase-out MSA and disqualify MSA from future performance as a result of organizational conflict of interest tainted solicitations,'" the Court "required 'operational detail

from the USPS' in the form of 'additional briefing' before entering a final judgment." *MSA II*, 164 Fed. Cl. at 458. "The 23 November 2022 order necessitated a supplemental response from the government, and instructed: 'If desired, any plaintiff may respond' to 'the USPS's proposed plans to phase-out MSA and disqualify MSA from future performance as a result of OCI-tainted solicitations." *Id.* "All parties—except MSA—responded to the government's additional briefing . . . ." *Id.* "AMK9 did not object to the USPS's proposed roll-out, but GK9 objected to certain [] USPS rollout changes." *Id.* MSA, however, "later filed a motion for a stay or injunction pending an appeal of the Court's 23 November 2022 order and [a] motion to expedite consideration of its motion to preserve the *status quo* of the USPS's 2022 resolicitation until the Federal Circuit [could] hear MSA's appeal." *Id.* at 458–59 (emphasis in original). The Court then "addresse[d] GK9's concerns with the USPS's proposed roll-out plan, finalize[d] the permanent injunction" disqualifying MSA, and "sustain[ed] AMK9's and GK9's pre-award bid protests and denie[d] MSA's motion for a stay of the Court's 23 November 2022 order." *Id.*

## B. MSA's Various Appeals & Ongoing Performance of Contract By Other Contractors

In November 2022, MSA appealed this decision, along with two other decisions related to this case. First, MSA appealed the Court's October 2022 Order contemplating the Court's injunction of MSA. *See* 3 Nov. 2022 Notice, *Michael Stapleton Assocs., Ltd v. United States*, No. 22-573 (Fed. Cl. Nov. 3, 2022), ECF No. 76. Second, MSA appealed the Court's November 2022 Order enjoining MSA from participating in the 2022 resolicitation. *See* 29 Nov. 2022 Notice, *Michael Stapleton Assocs., Ltd v. United States*, No. 22-573 (Fed. Cl. Nov. 29, 2022), ECF No. 86. Third, MSA appealed the Court's January 2023 Order adopting USPS's proposed resolicitation plan. *See* 7 Feb. 2023 Notice, *Michael Stapleton Assocs., Ltd v. United States*, No. 22-573 (Fed. Cl. Feb. 7, 2023), ECF No. 110. On appeal, the Federal Circuit denied MSA's Motion to Expedite decision on the Court's injunction.[4] *See* 23 Mar. 2023 Order, *Michael Stapleton Assocs., Ltd v. United States*, No. 23-1273 (Fed Cir. Mar. 23, 2023), ECF No. 30.

While the appeal was pending, performance of the contract at issue continued in parallel. The Court explained the status of contract performance during this time period—after MSA's appeal in this case—in a recent order in *Global K9*:

On 9 September 2022, following MSA's disqualification and the second re-solicitation, USPS awarded a contract to latecomer K2 Solutions, Inc. (K2). On 13 February 2023, plaintiff GK9 filed its most recent complaint, bringing a post-award

---

[4] "Despite this injunction, which intended to quickly terminate MSA's performance soon after November 2022, USPS effectively maintained a contract period even longer than [contracting officer "CO"] Franklin's decision to phase out MSA early by November 2023. *See MSA I*, 163 Fed. Cl. at 349 n.21; CO Franklin's 22 October 2021 Decision Following Second Remand (discussing corrective action to be taken by USPS: "modify[ing] the MSA contract so that the base term expires on November 6, 2023, instead of November 6, 2024, [] not [] exercis[ing] any renewal options under the contract [and] . . . conduct[ing] a new competition so that a new contract to fulfill the 3PK9 requirements will be in place at the conclusion of the 3-year term"). "MSA is therefore still performing work on this contract for a time period longer than CO Franklin intended in his October 2021 report and far longer than the Court intended in the November 2022 injunction order." *Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. 523, 529 (2024).

bid protest against USPS in response to the September 2022 awards.  AMK9, one of two awardees, joined soon after as a defendant-intervenor.  K2, on the other hand, opted not to intervene despite receiving proper notice and tracking the docket. . . . .

In March 2023, after reviewing the administrative record, GK9 amended its Complaint to allege awardee K2 materially misrepresented the quality of past work summarized in its proposal.  On 22 December 2023, following briefing on the parties' cross-MJARs, the Court enjoined USPS's award to K2 based on a finding of material misrepresentation in K2's proposal.  Specifically, the Court had "ample reason . . . [to] find[] . . . falsity in K2's proposal related to past performance." *Glob. K9 Prot. Grp., LLC v. United States*, 169 Fed. Cl. 116, 142 (2023). . . . .

On 10 January 2024, in response to the Court's Order, K2 filed a Motion to Intervene, ultimately requesting the Court reconsider its material misrepresentation findings.  Unbeknownst to the Court and plaintiffs, during this timeframe, USPS was moving forward with plans to terminate K2's services for default due to ongoing performance failures.  . . .  USPS, as a result of the termination for default, has moved forward with rolling out the contract with new awardees GK9 and AMK9.

*Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. 523, 529–30 (2024).  On 11 April 2024, the Court found as moot K2's motion to intervene and ordered the entry of judgment in case No. 23-210.  *See id.* at 561.[5]

### C.     *Michael Stapleton Associates, Ltd. v. United States*, No. 2023-1273, 2024 WL 2266341 (Fed. Cir. May 20, 2024)

On 20 May 2024, the Federal Circuit issued a decision affirming in part and reversing in part the Court's January 2023 Order in this case, ECF No. 113.  *See Michael Stapleton Assocs., Ltd. v. United States*, No. 2023-1273, 2024 WL 2266341 (Fed. Cir. 2024).  At the time of the Federal Circuit's decision, the contract had already been resolicited several times and canine screening services were being performed by contractors other than MSA.  *See Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. at 529–30 (detailing how following MSA's disqualification, there was a second resolicitation and the contract was awarded to latecomer K2 Solutions, Inc. ("K2") and upon its termination re-awarded to AMK9 and GK9 while MSA was still performing under the original contract).  In the previous *GK9* case, the government—along with GK9 and AMK9—characterized MSA's appeal as to its injunction as largely academic because other contractors had been performing canine screening services for nearly two years. *See id.* at 550 (explaining the case will be moot if we reopen and it is basically an "academic exercise, because . . . there is not a remedy the court can give," especially since it would be prejudicial to make the parties relitigate the case "given the parties have spent countless hours and dollars litigating this now-moot protest").

---

[5] K2 appealed this decision on 6 May 2024, and the appeal is currently pending before the Federal Circuit.  *See* Notice, *Glob. K9 Prot. Grp., LLC v. United States*, No. 23-210 (Fed. Cl. May 6, 2023), ECF No. 147.

In its decision, the Federal Circuit examined "whether USPS acted without a rational basis in allowing MSA to bid on the 2022 Solicitations and in setting the terms of the 2022 Solicitations, as modified in May 2022." *Michael Stapleton Assocs., Ltd.*, 2024 WL 2266341 at *5. The Federal Circuit first examined two of MSA's challenges of the 2022 resolicitation: "(1) USPS's choice to solicit canine screening services separately from alarm-resolution services; and (2) USPS's May 2022 shortening of the past-performance look-back period." *Id.* The Federal Circuit rejected both of MSA's challenges, finding USPS's decision to be "coherent, reasonable, and within the discretion of USPS." *Id.* The Federal Circuit then considered "whether it was irrational for USPS to permit MSA's participation in the procurement process for the 2022 Solicitations." *Id.* at 6. The Federal Circuit stated, "USPS had a rational basis for determining that MSA's former organizational conflict of interest had been mitigated sufficiently to warrant allowing MSA to bid in the 2022 Solicitations." *Id.* In reaching this conclusion, the Federal Circuit asked "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001)). The Federal Circuit opined, "[i]n demonstrating that an agency's decision finding no organizational conflict of interest is arbitrary or capricious, 'a protestor must identify 'hard facts;' a mere inference or suspicion of an actual or apparent conflict in not enough.'" *Id.* at *6 (first quoting *PAI Corp. v. United States*, 614 F.3d 1247, 1352 (Fed. Cir. 2010); and then quoting *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1582 (Fed. Cir. 1983)). Specifically, the Federal Circuit addressed three key issues in its decision: (1) examined MSA's alleged unequal access to information and biased ground rules in the Second Remand Decision; (2) addressed AMK9's and GK9's challenges; and (3) determined whether MSA had tainted incumbent advantage. *See id.*

First, the Federal Circuit focused on two points in assessing USPS's finding related to MSA's alleged unequal access to information and biased ground rules in the Second Remand Decision: (1) "the USPS contracting officer found that specific pieces of nonpublic information had been shared with MSA;" and (2) "that continuing communications between MSA and [USPS] during 2020, after the completion of the pilot program, may have given rise to biased ground rules . . . or unequal access to information." *Id.* at *7. On the first set of facts, "USPS determined that a majority of this nonpublic information was no longer current or accurate for the purposes of the 2022 Solicitation" and stated it would share the same information with all bidders. *See id.* As to the second set of facts, USPS determined "there was no evidence that MSA had been involved in drafting the solicitation's statement of work" and "many of the requirements on which MSA had provided input in 2020 would be modified in the new solicitations," so "[b]ased on the adjustments made for the new solicitation . . . any organizational conflicts of interest affecting the 2020 Solicitation had been effectively mitigated in the 2022 Solicitations." *Id.* The Federal Circuit held there was no "required concrete, hard facts—regarding specific unequal information or specific biased rules for receiving and award in the competition—needed to make USPS's judgment call unreasonable." *Id.*

Second, the Federal Circuit addressed AMK9's and GK9's challenge related to "the [USPS] employee who had earlier communicated with MSA [and] participated in 'lessons learned' discussions leading to the 2022 Solicitations, notwithstanding the recommendation of the Second Remand Decision that the Employee 'not be permitted to participate on the next technical evaluation team.'" *Id.* The Federal Circuit determined this Court's "conclusion that

USPS acted irrationally in its 2022 Solicitation" was not supported. *See id.* Specifically, the Federal Circuit found "no inconsistency in [the employee's] participation in 'lessons learned' discussions with respect to the *previous* solicitation" and it was within the agency's discretion to seek the employee's "input" as there was "no concrete, hard facts showing the employee's participation in 'lessons learned' discussions produced either biased ground rules or unequal information harming AMK9 or GK9." *Id.* (emphasis in original).

Third, the Federal Circuit addressed whether MSA had a "tainted incumbent advantage." *See id.* The Federal Circuit noted organizational conflict of interest is not created merely by "incumbent status," which "preserves for the public the opportunity to receive continued service form the firm (the incumbent) that might well be the best provider when re-competition occurs." *Id.* The Federal Circuit found USPS's determination "[USPS] should mitigate MSA's incumbent advantage" was done through "reasonable steps . . . by changing the evaluation criteria related to past performance." *Id.* The Federal Circuit concluded the steps taken by USPS to mitigate the incumbent advantage were not "irrationally adequate," as determined by the Court, but "was a reasonable judgment call" by USPS and was a "'coherent and reasonable explanation of its exercise of discretion.'" *Id.* at *8 (quoting *Impresa*, 238 F.3d at 1333).

The Federal Circuit ultimately reversed the Court's decision with respect to MSA's participation in the resolicitations and entry of injunction against MSA and affirmed with respect to the other challenged terms of the resolicitations. In particular, the Federal Circuit reversed the Court's decision "with respect to MSA's participation in the 2022 [re]solicitations and its entry of an injunction against MSA." *Id.* The Federal Circuit also "considered the parties' other arguments, and [found] them unpersuasive." *Id.* In its reversal, the Federal Circuit did *not* remand the case for further proceedings or provide remand instructions. *See id.*

### D.    Procedural History After the Federal Circuit's 20 May 2024 Decision

The Court provided a detailed background in its 17 June 2024 Order on the current posture in this case:

On 20 May 2024, the Federal Circuit issued a decision affirming in part and reversing in part the Court's January 2023 Order, ECF No. 113. *Michael Stapleton Assocs., Ltd. v. United States*, No. 2023-1273, 2024 WL 2266341 (Fed. Cir. May 20, 2024). On 10 June 2024, Michael Stapleton Associates, Ltd. ("MSA") filed a Motion for Immediate Issuance of the Mandate with the Federal Circuit, which was not to be issued until 11 July 2024. *See* Appellant MSA's Nonconfidential Mot. for Immediate Issuance of Mandate ("MSA's Mot. for Immediate Mandate"), *Michael Stapleton Assocs., Ltd. v. United States*, No. 2023-1273 (Fed. Cir. June 12, 2024), ECF No. 108. On 13 June 2024, by direction of the Federal Circuit, Global K9 Protection Group, LLC ("GK9") responded and opposed MSA's Motion for Immediate Issuance of the Mandate, noting: "[t]he Court affirmed the judgment in part and reversed it in part, but did not remand the case to the Claims Court for further proceedings. MSA's request on that basis appears to be an improper attempt to modify the Court's opinion and judgment, without showing a basis to do so." Appellee GK9's Resp. in Opp. to Appellant MSA's Mot. for Immediate Issuance

of Mandate, *Michael Stapleton Assocs., Ltd. v. United States*, No. 2023-1273 (Fed. Cir. June 13, 2024), ECF No. 111. GK9 noted, however, "Without waiver of the foregoing objection, GK9 does not object to the immediate issuance of the mandate based on the opinion and judgment, as entered." *Id.* at 2. On 14 June 2024, the Federal Circuit issued the formal mandate, returning jurisdiction to this Court, ECF No. 114.

On 10 June 2024, prior to the Federal Circuit mandate being issued, *see supra*, MSA filed under seal its (1) Motion to Reopen the Case and for Temporary Restraining Order (TRO) and Preliminary Injunction and (2) Second Amended Complaint in related case No. 23-210, *Global K9 Protection Group, LLC v. United States*, because of the Federal Circuit's 20 May 2024 decision reversing in part. *See* MSA's Mot. to Reopen Case, and for a TRO and Prelim. Inj. ("MSA's Mot. to Reopen Case"), *Global K9 Protection Group, LLC v. United States*, No. 23-210 (Fed. Cl. June 10, 2024), ECF No. 148; MSA's Second Am. Compl., *Global K9 Protection. Group, LLC v. United States*, No. 23-210 (Fed. Cl. June 10, 2024), ECF No. 149. Per its Motions, MSA seeks an injunction of the United States Postal Service's (USPS) transition of 3PK9 services away from MSA. *See* MSA's Mot. for Immediate Mandate at 3 (filed publicly); *see also* MSA's Mot. to Reopen Case, TRO, Prelim. Inj. at 1. MSA notes: "USPS has indicated that it does not plan to take any steps to stop the transition of 3PK9 services work away from MSA . . . until a court explicitly orders it to do so." *See* MSA's Mot. Mandate Issuance at 5 (filed publicly).

17 June 2024 Order, ECF No. 115. On 17 June 2024, the Court issued an order directing the government to file a joint status report (JSR) on or before Thursday, 20 June 2024. 17 June 2024 Order, ECF No. 115. On 27 June 2024, AMK9 filed the parties' "Joint Motion to Use Protected Material from Case No. 22-573 in Briefings for Case No. 23-210, 23-311" to use sealed information from case No. 22-573 in case No. 23-210, ECF No. 121, which the Court granted, ECF No. 122. The Court issued updated protective orders in consolidated case Nos. 22-573, 22-620, and 22-630, and consolidated case Nos. 23-210, 23-311, which effectively replaced the existing protective orders in place in those cases, *see* ECF No. 123. On 2 July 2024, the Court held a status conference on next steps in this case, *see* ECF No. 120.

On 3 July 2024, the Court ordered MSA to file a JSR "on or before 10 July 2024 with an update regarding: "[w]hat proceedings, if any, are required in this case or if the Court may enter final judgment; and [i]nclude any response from the government, AMK9, or GK9 regarding MSA's position." *See* 3 July 2024 Order, ECF No. 124. In the JSR, MSA advanced the position the Court should issue an order and final judgment amending the solicitation and contract performance. *See* 10 July 2024 Sealed JSR, ECF No. 125 at 8. The government, GK9, and AMK9 reiterated their shared position of there being no remaining issues for this Court to resolve in the current case and requested the Court deny MSA's motion and finally bring the case to an end. *See id.* at 8–12.

On 10 July 2024, after the government, GK9, and AMK9 filed responses to MSA's (1) Motion to Reopen the Case and for Temporary Restraining Order (TRO) and Preliminary

Injunction; and (2) Second Amended Complaint in related case No. 23-210, *Global K9 Protection Group, LLC v. United States*, MSA filed a Notice of Voluntary Dismissal without prejudice in *GK9*. *See* MSA's Notice, *Global K9 Protection Group, LLC v. United States*, No. 23-210 (Fed. Cl. July 10, 2024), ECF No. 160. MSA's Notice stated: "[p]ursuant to Rule 41(a)(1)(A)(i) of the Rules of the Court of Federal Claims, Plaintiff Michael Stapleton Associates, Ltd., doing business as MSA Security, Inc. ("MSA"), hereby submits this voluntary dismissal of its Second Amended Complaint, *see* ECF No. 149, and its withdrawal of its Motion to Reopen the Case, and for a Temporary Restraining Order and Preliminary Injunction, ECF No. 148, without prejudice." *Id.* at 1. The Court interpreted MSA's Notice as a motion given the case was closed, so the Court granted MSA's Dismissal without prejudice and withdrawal of the motion. *See* 12 July 2024 Order, *Global K9 Protection Group, LLC v. United States*, No. 23-210 (Fed. Cl. July 12, 2024), ECF No. 161. The Court directed the Clerk of Court to withdraw MSA's (1) Motion to Reopen Case and for Temporary Restraining Order (TRO) and Preliminary Injunction; and (2) Second Amended Complaint. *See id.* at 2.

In this case, on 11 July 2024, the Court ordered MSA to file a motion requesting its desired relief. *See* 11 July 2024 Order, *Michael Stapleton Assocs., Ltd v. United States*, No. 22-573 (Fed. Cl. July 11, 2024), ECF No. 126.

## II.    Procedural History of MSA's Motion

On 25 July 2024, MSA filed its sealed "MOTION for return of contract to MSA" in response to the Court's 11 July 2024 Order. *See* MSA's Mot. for Relief, ECF No. 127. On 7 August 2024, the government filed its sealed response to MSA's Motion. *See* Gov't's Resp. to MSA's Mot. for Relief ("Gov't's Resp."), ECF No. 128. On 8 August 2024, GK9 filed an unopposed motion for extension of time, ECF No. 129, which the Court granted in a non-pdf order. Also on 8 August 2024, AMK9 filed its sealed Response to MSA's Motion. *See* AMK9's Resp. to MSA's Mot. for Ext. of Time ("AMK9's Resp."), ECF No. 130. On 12 August 2024, GK9 filed its Response to MSA's Motion. *See* GK9's Resp. to MSA's Mot. for Relief ("GK9's Resp."), ECF No. 132. On 21 August 2024, MSA filed its sealed Reply to the responses by the government, GK9, and AMK9. *See* MSA's Reply, ECF No. 132. On 8 October 2024, the Court held oral argument. *See* 30 August 2024 Order, ECF No. 134.

## III.    Parties' Arguments

In seeking relief after the Federal Circuit's reversal-in-part and affirmance-in-part, MSA asks the Court to put it back in the position it was prior to the Court's injunction. MSA specifically urges the Court order USPS—or on its own accord—reassign all third-party canine mail screening services back to MSA. Of note, MSA is not challenging the alarm resolution contracts, as those contracts were never transferred from MSA to another contractor, so MSA is still performing the alarm resolution services for USPS nationwide. MSA asks the Court to reassign all contracts back to MSA even though the Federal Circuit did not remand the case or provide further instructions to guide the Court on how to proceed moving forward. MSA alternatively seeks discretionary relief under Rule 60 of the RCFC.

A.    **MSA's Request to Transition the Five Regional Clusters Under the Canine Mail Screening Contract Back to MSA**

MSA, in seeking reinstatement of the previously-awarded contracts, argues the Federal Circuit's opinion "did not provide specific instructions as to how this Court should proceed once jurisdiction was returned to this Court" and "the law is clear that the Federal Circuit's silence is not an invitation for this Court to do nothing but rather is a mandate that it rectify the effects of its prior erroneous decision." MSA's Mot. for Relief at 2. Specifically, MSA only challenges the retroactive disqualification of MSA as-applied to the third-party canine mail screening services, because the alarm resolution contracts were never transferred from MSA to another contractor and MSA is still performing these nationwide services for USPS. *See id.* at 2, n.1.

MSA argues the effect of the Federal Circuit's reversal opinion was to "'nullify . . . completely' the Court's November 23, 2022 judgment regarding MSA" and the Court is now "permitted to take any action that is consistent with the Federal Circuit's mandate, the mandate having been 'discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion,' even if such action was not explicitly directed by the Federal Circuit." *See* MSA's Mot. at 3 (quoting *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483–84 (Fed. Cir. 1998)). According to MSA, implementation of its requested relief is "consistent with both the plain language and metaphysical thrust of the Opinion—that MSA's exclusion was wrongful from the get-go and should be rectified." *Id.* at 3 (citing *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997) ("[T]he [trial] court's actions on remand should not be inconsistent with either the letter or the spirit of the mandate.").

Ultimately, MSA requests the issuance of an order and final judgment requiring USPS to: (1) "[t]ransition back to MSA the five regional clusters originally awarded to MSA under the 2022 3PK9 Solicitation . . . according to a reasonable schedule that takes into account operational realities but that proceeds without undue delay;" and (2) "[r]eevaluate and re-award the two clusters that were originally awarded to [K2] in February 2023 and which were later transferred to [GK9]" after K2's contract was terminated for default because "[n]ow that MSA's wrongful disqualification has been reversed, USPS must perform a new best-value determination involving MSA, AMK9, and GK9 to determine which should replace the terminated K2." *Id.* at 4–5. MSA avers this relief is appropriate "even though the Opinion did not include any specific instructions for the Court on remand." *Id.* at 5–6.

In rebuttal, the government, AMK9, and GK9 argue the only action consistent with the Federal Circuit's Mandate, as informed by the Federal Circuit's Opinion, judgment, and other rulings on appeal, is for the Court to enter final judgment and close the case. *See* Gov't Resp. at 3 (explaining "MSA seeks extraordinary relief from this Court that the Federal Circuit deemed unwarranted"); AMK9's Resp. at 4 (explaining "MSA now asks this Court to grant relief it did not seek from the Federal Circuit" and asks for relief without pointing to fact or law to support such relief); GK9's Resp. at 1 ("The Federal Circuit ended this case and gave MSA all the 'relief' it can get."). Opposing MSA's requested relief, the government, AMK9, and GK9 argue the Court has no authority to mandate procurement actions, nor can it reassign airport sites or reinstate prior awards that have been superseded by subsequent award decisions, or order USPS to reevaluate proposals as part of the 2022 resolicitations. *See* Gov't Resp. at 2; *see also*

AMK9's Resp. at 5 ("MSA offers no insight as to how, in the context of a pre-award protest that enjoined MSA from bidding, this Court could now require USPS to award a contract to MSA."); GK9's Resp. at 3 ("The Federal Circuit's opinion reversed the Court's decision to disqualify MSA from bidding on the 2022 Solicitations but said nothing about remand or reinstatement."). Ultimately, the government, AMK9, and GK9 argue MSA requests relief the Federal Circuit deemed unwarranted. *See* Gov't's Resp. at 3–4 (explaining the Federal Circuit denied MSA's motion to enjoin, pending appeal, USPS's transition of sites under the 3PK9 contract away from MSA, the Federal Circuit "tacitly denied MSA's request for a remand," and the Federal Circuit did not grant MSA's request to reinstate its contract); AMK9's Resp. at 3 (arguing the Federal Circuit "did not remand the case as requested by MSA; nor did the Federal Circuit issue an order reinstating MSA's contracts, as MSA asked for in its reply brief") (emphasis omitted); GK9's Resp. at 3 (arguing "[r]emand is a remedy" and "MSA's opening brief urges the Federal Circuit to 'reverse the trial court's judgment and remand this case for further proceedings'").

Overall, the government, AMK9, and GK9 argue this is a different case now and the Court should end the case so everyone can move on. *See* Gov't's Resp. at 2 ("MSA demands far more than the dissolution of the Court's injunction permits. Glaringly, this is a different case now."); AMK9's Resp. at 6 ("MSA offers no insight as to how, in the context of a pre-award protest that enjoined MSA from bidding, this Court could now require USPS to award a contract to MSA.") (emphasis omitted); GK9's Resp. at 3 (arguing for denial of MSA's motion and to "close this case so everyone can 'move on' as USPS told the Federal Circuit it wanted to do").

### B.    MSA's Alternative Request for Relief Under Rule 60

MSA also seeks relief under Rule 60 of the RCFC. MSA acknowledges "Rule 60(b)(6) is not the best avenue for MSA to seek relief, since this Court's judgment of November 22, 2022 has completely dissolved such that there is no longer a 'judgment' from which this Court could grant relief." MSA's Mot. at 19. MSA nevertheless doubles down and explains "should the Court feel it is necessary to rely on Rule 60 to afford MSA the relief it seeks, MSA has certainly established in this filing that there are multiple compelling reasons for granting it relief from judgment." *Id.* MSA is the only party to address relief under Rule 60, and the government, AMK9, and GK9 do not respond to MSA's Motion for Relief under Rule 60. *See generally* Gov't's Resp.; AMK9's Resp.; GK9's Resp.

### IV.    Legal Authority as to How the Court Should Proceed Following a Federal Circuit Decision Not Remanding or Providing Remand Instructions

When interpreting a Federal Circuit mandate, the Court begins by "looking at the language of the judgment . . . in combination with the accompanying opinion." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998). Unless the Federal Circuit remands a case, "all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). The mandate rule further "forecloses reconsideration of issues implicitly or explicitly decided on appeal." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008).

In reversing the Court, the Federal Circuit did not remand the case for further proceedings or provide remand instructions; the only instruction provided is the last paragraph:

> We have considered the parties' other arguments, and we find them unpersuasive. For the foregoing reasons, we reverse the decision of the [Court of Federal Claims] with respect to MSA's participation in the 2022 [res]olicitations and its entry of an injunction against MSA, and we affirm with respect to the other challenged terms of the 2022 [res]olicitations.

*Michael Stapleton Assocs., Ltd.*, 2024 WL 2266341 at *8. While rare, when faced with this procedural posture after a Federal Circuit decision—reversal in part, affirmance in part, and no remand or remand instructions—other Court of Federal Claims judges have followed a generally consistent practice, and the Court finds these cases persuasive in determining next steps here. First, in *Consolidated Edison Co. of New York v. Entergy Nuclear Indian Point 2, LLC*, 676 F.3d 1331, 1341 (Fed. Cir. 2012), the Federal Circuit "AFFIRMED IN PART AND REVERSED IN PART" Judge Wheeler's damages rulings. In that case, the Federal Circuit (1) "affirm[ed] the Claims Court's denial of [plaintiff's] cost of capital claims," *id.* at 1340, as following Federal Circuit precedent, (2) "reverse[d] the Claims Court's award of . . . damages for generic fees" and "costs of operating" because the plaintiff failed to prove causation, *id.* at 1336, 1340, and (3) "reverse[d] the Claims Court's denial of damages for overhead costs" as inconsistent with Federal Circuit precedent, *id.* at 1340. Despite the Federal Circuit reversing the Court of Federal Claim's denial for overhead cost damages, the Federal Circuit did not provide remand instructions. *Id.* at 1340. After the Federal Circuit's decision, Judge Wheeler issued a scheduling order for a status conference, and the parties agreed "there [was] no need for any further proceedings or briefings in this case." *See* 12 June 2022 Order at 1, *Entergy Nuclear Indian Point 2 v. United States*, No. 03-2622 (Fed. Cl. June 12, 2012), ECF No. 262. Judge Wheeler then ordered the entry of final judgment. *See id.* Second, in *Kansas Gas and Electric Co. v. United States*, 685 F.3d 1361, 1371 (Fed. Cir. 2012), the Federal Circuit "AFFIRMED-IN-PART AND REVERESED-IN-PART" Judge Miller's damages findings and noted plaintiff's "method for calculating overhead costs was reasonable and complied with FERC accounting standards" and "[a]s such, this court reverses the trial court's refusal to accept these calculations" and "affirms the remainder of the trial court's decision." *Id.* The Federal Circuit did not provide remand instructions. *Id.* After the Federal Circuit decision, Judge Miller directed the parties to file a joint status report, and the parties ultimately agreed there was no need for further proceedings. *See* Order at 1, *Kan. Gas & Elec. Co. v. United States*, No. 04-99 (Fed. Cl. Oct. 26, 2012), ECF No. 162. Judge Miller then ordered entry of an amended final judgment. *See* 1 Nov. 2012 Order at 1, *Kan. Gas & Elec. Co. v. United* States, No. 04-99 (Fed. Cl. Nov. 1, 2012), ECF No. 163. Third, in *CCA Associates v. United States*, 667 F.3d 1239, 1250 (Fed. Cir. 2011), the Federal Circuit "AFFIRMED-IN-PART" and "REVERSED-IN-PART" Judge Lettow's post-trial liability decisions. In affirming Judge Lettow's finding of governmental non-liability for breach of contract, the Federal Circuit noted, "the Court of Federal Claims correctly determined *Cienega* [*Gardens v. United States*, 194 F.3d 1231 (Fed. Cir. 1998)] forecloses [plaintiff's] contract claims in this case." *Id.* In reversing Judge Lettow's finding of governmental liability for regulatory taking, the Federal Circuit "conclude[d] that [plaintiff] failed to establish . . . a regulatory taking." *Id.* at 1248. The Federal Circuit did not provide remand instructions. *Id.* at 1250. Judge Lettow requested plaintiff address whether the case ought to be dismissed, and

plaintiff concluded it "was unaware of issues remaining for [the Court of Federal Claims] to resolve," Pl.'s Resp. at 1, *CCA Assocs. v. United States*, No. 97-334 (Fed. Cl. Jan. 12, 2012), ECF No. 172, and the government agreed, noting "[t]he case was not remanded for further proceedings," Gov't Resp. at 1, *CCA Assocs. v. United States*, No. 97-334 (Fed. Cl. Jan. 18, 2013), ECF No. 173.  Judge Lettow then ordered the entry of final judgment.  22 Jan. 2013 Order at 1, *CCA Assocs. v. United States*, No. 97-334 (Fed. Cl. Jan. 22, 2013), ECF No. 114.  In short, the courts ordered further briefing and then—without taking additional action—ordered final judgment.  *Id.*

At oral argument, MSA agreed *Entergy Nuclear*, *Kansas Gas*, and *CCA Associates* are procedurally similar to the Federal Circuit's reversal-in-part without remanding or providing remand instructions.  *See* Tr. at 20:8–17 ("[THE COURT:]  [B]ut in all those cases, . . . if we look at the language of what the Federal Circuit did . . . when the Federal Circuit uses this type of language, generally speaking, the Court of Federal Claims conducts no further proceedings, and the case is closed . . . . [MSA:]  [T]hat certainly was the case in these three cases.").  MSA also agreed it is within the Court's discretion to determine appropriate next steps when the Federal Circuit reverses a case and does not remand or provide remand instructions.  Tr. at 62:17–25 ("THE COURT:  So what to do is within the Court's discretion?  [MSA:]  Yes.  I mean, you know, within the bound of the Federal Circuit's decision, but . . . you know, in terms of . . . what, if any, future proceedings are necessary and what the outcome of those future proceedings might be, . . . that's something that is . . . within this Court's discretion.").  The Court, in staying consistent with procedurally similar Court of Federal Claims cases, ordered the parties to brief whether MSA was entitled to its requested relief following the Federal Circuit Opinion and Mandate, *see* 11 July 2024 Scheduling Order (directing MSA to file a motion requesting its desired relief), and held oral argument to determine the next appropriate steps in the case, *see* 30 August 2024 Order, ECF No. 134 (setting oral argument on MSA's Motion for relief).  What is inconsistent, however, is MSA's request for further substantive proceedings now.

MSA argues in part this case is particularly unique and warrants further substantive proceedings; especially given the Federal Circuit granted MSA's Motion to Expedite the Mandate issuance.  According to MSA, if the Motion to Expedite briefing explained further proceedings were needed, and the Federal Circuit granted the Motion to Expedite, then further proceedings are now warranted.  *See* Tr. at 22:2–6.  Although MSA later conceded at oral argument the Mandate is purely administrative and simply puts the Opinion into place.  *See* Tr. at 21:14–20 ("THE COURT:  What does . . . mandate rule impose[] in this case?  [MSA:]  [T]he mandate is, of course, just an administrative, you know, pro forma . . . document that puts the opinion into place.").  Given the uniqueness of this request, the Court's review will consider the Mandate in conjunction with the Opinion in determining whether further proceedings are necessary.  *Exxon*, 137 F.3d at 1483.  The Court will first examine whether further proceedings are warranted as to MSA's participation in the 2022 resolicitations and its entry of an injunction against MSA.  Then the Court will determine whether MSA's requested relief under Rule 60 is appropriate.

V.    **Whether Further Proceedings Are Warranted to Determine If MSA Is Entitled to Reinstatement of Previously Awarded Contracts Without the Federal Circuit Remanding the Case or Providing Remand Instructions**

In seeking "any further relief [the Court] deems just and proper in light of the [Federal Circuit's] reversal of th[e] Court's judgment in this case," MSA argues "the law is clear that the Federal Circuit's silence is not an invitation for the Court to do nothing but rather is a mandate that it rectify the effects of its prior erroneous decision." MSA's Mot. at 2. Ignoring the fact that this is not the same case MSA appealed in 2022, MSA urges the Court to reinstate contracts MSA was previously awarded—MSA agreed at oral argument it is asking the Court to go as far as changing USPS awards issued after the original contract issuance. *See* Tr. at 80:4–81:3 ("THE COURT: So this is a pre-award case, and now the relief that [MSA is] asking for . . . is for the Court to change USPS awards that occurred after original contract issuance . . . . [MSA:] Certainly the Court has re-evaluated proposals it received in response to those solicitations and made new award decisions, that's true, but we're still dealing with the same solicitations, . . . and we're asking the Court to put [MSA] back in the position that [MSA was in] when this case kicked off as a result of an injunction that this Court instituted in this case.").

To determine whether MSA is entitled to relief, the Court will first analyze whether MSA's requested relief was before the Federal Circuit, and if such relief was considered in its Opinion and Mandate. In analyzing a Federal Circuit judgment, the Court begins by looking at "the language of the judgment . . . in combination with the accompanying opinion." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998).[6] Unless the Federal Circuit remands a case, "all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication." *Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). In determining what issues were before the Federal Circuit, the Court will examine how the contracts' current status relates to the reversal of the Court's injunction without remand or reversal-implementation instructions. *See Exxon*, 137 F.3d at 1483. In reviewing the contracts' current status, the Court evaluates USPS's discretionary contract administration and considers whether MSA should have sought relief from USPS.

A.    **Whether MSA's Requested Relief Was Before the Federal Circuit and Considered in its Opinion and Mandate**

---

[6] At oral argument, MSA relies on *Exxon* as the best case to support the requested relief is warranted. *See* Tr. at 32:1–8 ("[THE COURT:] [Y]ou bring up the Exxon case. Is that your best case for the Court's invitation on what it should do now, then? [MSA:] I think it's the best case on what typically happens after a Federal Circuit reversal when there are still issues left to decide and how the Federal Circuit's decision should be read . . . when the Court is examining what to do next."). Comparing *Exxon* and the current case, however, is like comparing apples to watermelons as the cases are inapposite. In *Exxon*, the Federal Circuit initially reversed an earlier jury verdict on literal patent infringement. *See Exxon*, 137 F.3d at 1477. The district court judge interpreted the Federal Circuit's mandate as prohibiting further substantive proceedings on infringement under the doctrine of equivalents. *See id.* Since the Federal Circuit's prior opinion was confined only to literal patent infringement, the mandate did not deprive the district court of its power to hold a new trial on the new theory of infringement. *See id.* As discussed at length at oral argument, the circumstances in *Exxon* fully warranted further substantive proceedings. *See* Tr. at 34:2–38:7 (comparing *Exxon* to the current case).

"The mandate rule provides that 'issues actually decided on appeal—those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration.'" *Haggart v. United States*, 943 F.3d 943, 951 (Fed. Cir. 2019) (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)).  The mandate rule also "forecloses reconsideration of issues implicitly or explicitly decided on appeal."  *Amado*, 517 F.3d at 1364.  Unless remanded by the Federal Circuit, "all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication."  *Engel Indus.*, 166 F.3d at 1383.  The Court therefore must analyze whether MSA asked for and the Federal Circuit considered reversal, remand, and reinstatement.

When MSA appealed this case to the Federal Circuit, it first filed a motion for stay pending appeal, or in the alternative, to expedite the briefing schedule.  *See* MSA's Mot. to Expedite Br. Sched., *Michael Stapleton Assocs., Ltd. v. United States*, No. 23-1273 (Fed Cir. Mar. 23, 2023), ECF No. 18.  In its motion, MSA asked the Federal Circuit to enjoin the transition of MSA's previously awarded contracts pending appeal because, absent a stay, MSA would be irreparably harmed.  *See id.* at 3.  Without an injunction, MSA explained, it would be forced to begin transitioning its contracts to other contractors beginning in April 2023.  *See id.* at 7, 18.  Despite MSA's irreparable harm argument, the Federal Circuit denied the motion and held:  "Based on the papers submitted . . . we conclude that [MSA] has not established that an injunction is warranted here."  23 Mar. 2023 Order, *Michael Stapleton Assocs., Ltd. v. United States*, No. 23-1273 (Fed Cir. Mar. 23, 2023), at 3, ECF No. 30.  MSA agreed at oral argument it filed the motion to expedite because MSA did not want to lose the contracts through transition if MSA was later successful on appeal.  *See* Tr. at 14:25–15:7 ("[THE COURT:]  [W]hat was the motion to expedite based on?  [MSA:]  It was based largely on the fact that we had these contracts removed from [MSA], and . . . we wanted to get them back as soon as possible . . . . THE COURT: Was it not because . . . those contracts would transition.  [MSA:]  That was part of it as well.").  While the Federal Circuit did not fully analyze the injunction factors in its denial of MSA's motion, it implicitly understood the status of the contracts was at issue on appeal.  The Federal Circuit further understood the ramifications of not issuing an injunction given MSA's detailed briefing as to the contract transition timeline and what would occur if the transitions continued.  *See generally* MSA's Mot. to Expedite Br. Sched.  "The mandate rule provides that 'issues actually decided on appeal . . . are foreclosed from further consideration.'" *Haggart*, 943 F.3d at 951 (citing *Amado*, 517 F.3d at 1360).  Accordingly, under the caselaw, the Court is now limited from considering whether it should transition the contracts back to MSA, as the transition issue was on appeal and considered in the Federal Circuit's denial of the motion to expedite.  *See Amado*, 517 F.3d at 1364 (noting the mandate rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal").  As such, the Federal Circuit's denial of the motion to expedite weighs against granting MSA's requested relief now.  *See id.*; *Haggart*, 943 F.3d at 951.

Following the Federal Circuit reversal of the Court's injunction, MSA now asks the Court to do what the Federal Circuit would not—reinstate MSA's originally awarded contracts.  On appeal, MSA's opening brief urged the Federal Circuit to "*reverse* the trial court's judgment and *remand* this case for further proceedings," MSA Op. Br., *Michael Stapleton Assocs., Ltd. v. United States*, No. 23-1273 (Fed Cir. Mar. 23, 2023), at 35, 85, ECF No. 14 (emphasis added),

and MSA's reply brief requested the Federal Circuit to "overturn" the Court's decision and "*reinstate*" MSA's contracts, MSA Reply, *Michael Stapleton Assocs., Ltd. v. United States*, No. 23-1273 (Fed Cir. Mar. 23, 2023), at 39, ECF No. 46 (emphasis added). At oral argument, MSA agreed it asked for remand, reversal, and reinstatement from the Federal Circuit. *See* Tr. at 64:17–65:4 ("[THE COURT:] [Y]ou already agree that you explicitly asked the Federal Circuit to reverse and remand and reinstate—so that's three 'R' words, reverse, remand, and reinstate— you asked that of the Federal Circuit? [MSA:] [MSA] asked for reverse and remand. The reinstatement was, you know, more . . . aspirational, what should happen in the future. THE COURT: But you did use those three 'R' words? [MSA:] The word 'reinstatement' appears in [MSA's] brief."). MSA also admitted remand and reinstatement were actually discussed and considered by the Federal Circuit. *See* Tr. at 42:22–43:19 ("[THE COURT:] [Y]our brief asks for reinstatement. The oral argument talked about the contract and the current procedure, posture, steps of the contract, and the impact of various types of outcomes from the Federal Circuit. The Federal Circuit issued a legal reversal, and then they also included language, 'We have considered the parties' other arguments and find them unpersuasive.' And they specifically quote, 'reverse the decision of the [Court of Federal Claims] with respect to MSA's participation in the 2022 solicitations and its entry of an injunction.' So how is that the Federal Circuit did not cover everything? And how is it that [the Court] can even go back [and] revisit what you argued in your brief and what you discussed with the Circuit, and say that the Circuit implied doing more? [MSA:] [MSA] didn't discuss it with the Federal Circuit. [The government] did. THE COURT: It was discussed. [MSA:] It was discussed.").[7] By MSA's own admission, the issues of remand and reinstatement were therefore before the Federal Circuit. Indeed, the Federal Circuit "considered the parties' other arguments, and we find them unpersuasive." *See Michael Stapleton Assocs., Ltd.*, No. 23-1273, 2024 WL 2266341, at *8 (Fed. Cir. 2024). MSA now seeks from the Court the exact relief it sought from the Federal Circuit, but the Court cannot grant MSA the same relief the Federal Circuit considered because the mandate rule "forecloses reconsideration of issues implicitly or explicitly decided on appeal." *Amado*, 517 F.3d at 1364. Additionally, as noted by MSA, it is within the Court's discretion to determine the next appropriate steps in a case when the Federal Circuit reverses a case but does not remand the case or provide remand instructions. *See* Tr. at 62:17–25. In the Court's discretion, it is inclined to follow the general practice of other Court of Federal Claims judges to not conduct further substantive proceedings, and to enter final judgment in the case.

**B.    The Current Status of the Contracts as Related to the Federal Circuit Reversal**

The Court's inquiry, however, is not complete, as it must next examine the current status of the contracts and evaluate USPS's discretionary contract administration and whether MSA should have sought relief from USPS. In doing so, the Court will analyze whether it can even

---

[7] *See infra* Section V.B.2 (discussing how the Federal Circuit at oral argument considered, and was receptive to, the government's arguments regarding USPS's administration of the contract). Given how much contract work has occurred since the initial injunction decision, USPS explained it wanted to "move on" and requested the Federal Circuit to not disrupt the current services. *See* Tr. at 51:20–53:15. The Federal Circuit seemingly considered this argument as it only made a legal decision and chose not to upset USPS's contract administration. *See* Tr. at 52:17–22 ("THE COURT: And at the end of the day the Federal Circuit made a legal decision that the Government took no stake in, but the Federal Circuit seems to have agreed with the [g]overnment that the contract not be upset.").

reinstate the originally-awarded contracts to MSA as the Court's previous decisions in this case have exclusively concerned a bid protest within the pre-award context. *See Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. 523, 529 (2024) (explaining MSA was appealing the Court's decision in a pre-award protest).

### 1.    The Federal Circuit's Consideration of the Various Contracts at Issue

MSA is asking the Court to change USPS's 2023 awards, which superseded all prior award determinations. MSA "does not dispute that [USPS]'s February 2023 awards replaced the September 2022 awards, at least for the period during which this Court's November 2022 injunction to disqualify MSA still stood. Rather, it is MSA's position that, notwithstanding the actions that [USPS] took to implement this Court's erroneous injunction, in light of the Federal Circuit's judgment, this Court can, and indeed must, order relief that unwinds the injunction and the inevitable effects that followed it." MSA Reply at 11–12 (emphasis omitted). The government, AMK9, and GK9 contend MSA does not explain how the Court can reach past this pre-award case—and the 2023 post-award protests—to upend an award MSA never separately protested. *See* Gov't Resp. at 4–6; AMK9's Resp. at 6–7; GK9's Resp. at 5 n.4, 6. Indeed, MSA cites to no caselaw for such a proposition. At oral argument, MSA agreed this case is a pre-award case, *see* Tr. at 79:21–24 ("[THE COURT:] [T]his case is all a pre-award case. [MSA:] This is a pre-award case, correct, Your Honor."), but maintains the Court should nevertheless reinstate MSA's contracts and put it back in the position it was prior to the Court's injunction, *see* Tr. at 80:4–17 ("THE COURT: So this is a pre-award case, and now the relief [MSA is] asking for . . . is for the Court to change USPS awards that occurred after original contract issuance."). MSA, as previously discussed *supra* Section V.A, sought a stay of the transition of contracts because it knew the contracts would be taken away and potentially never returned. *See* Tr. at 15:10–15 ("[THE COURT:] [MSA's] point back in early 2023 [in its Motion to Expedite] was that the ship would have sailed. [MSA:] [MSA] was afraid that the ship would have sailed."). MSA—despite no longer performing the contracts and the Federal Circuit denying such relief—maintains the contracts can be reinstated. *See* Tr. at 15:16–16:3 ("THE COURT: Has the ship sailed? [MSA:] It has not sailed. I mean, there is absolutely no reason why [USPS] can't transition these [contracts] back to MSA. THE COURT: Well, it would have to sail back now. [MSA:] It would have to sail back. THE COURT: But [MSA] agree[s] the ship has sailed. [MSA:] The ship has sailed insofar as MSA is no longer performing at any sites the K-9 services . . . . but there is no . . . legal reason why this Court can't order the ship to sail back, as it were."). As discussed *supra* Section V.A, the Federal Circuit considered the status of the contracts on appeal, and in its decision denying MSA's Motion to Expedite, the Federal Circuit did not upset the contracts and sail the ship back. As such, the Court cannot reconsider arguments considered on appeal and sail the ship back. *See Amado*, 517 F.3d at 1364 (explaining "the mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal").

### 2.    USPS's Discretion in Contract Administration

MSA argues USPS's decision to transition work rightfully won by MSA to other contractors and to maintain those contract awards even in light of the Federal Circuit opinion, are part of a "protest objecting to any 'alleged violation of statute or regulation in connection with a

procurement or a proposed procurement.'"  *See* MSA's Mot. at 8 (citing *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 527 (2010)).  MSA further argues, since the "initial award of the five clusters to MSA was the subject of a competition but the results of that competition were wrongfully nullified by this Court," then "the results of that competition are not being properly implemented [so] it is necessarily the province of this Court to rectify that situation." *Id.* at 9 (emphasis omitted).  At oral argument, MSA admitted it is asking the Court to upset USPS's ongoing contract administration.  *See* Tr. at 81:21–82:6 ("THE COURT:  Wouldn't what you're asking for now upset [] USPS's ongoing contract administration?  [MSA:]  Yeah.").  MSA also agrees USPS made an initial decision MSA was the best value contractor, and in its discretion, USPS could do so again, but MSA still urges the Court to inject itself into USPS's discretionary contract administration.  *See* Tr. at 82:18–83:3 ("[THE COURT:]  But now [USPS] made a decision that MSA was the best value.  [MSA:]  Correct.  THE COURT:  [USPS] could do so again.  It's within their discretion.  [MSA:]  Sure.  THE COURT:  But you want the Court to inject itself into that discretion?  [MSA:]  Yes.").  MSA admits there is no case supporting the Court's ability to inject itself into USPS's discretion and disrupt contract administration.  *See* Tr. at 83:4–13 ("THE COURT:  And is there any case that supports the Court being able to [inject itself into USPS's discretion] now?  [MSA:]  There is no Court of Federal Claims case in which a court has directed award in this scenario. . . . [T]he answer [t]o your question, Your Honor, is no.").  The Contract Disputes Act scheme addresses these types of claims.  According to the Federal Circuit, administration matters like "adding work to an existing contract that is clearly within the scope of the contract[,] do[] not raise a viable protest."  *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008).  Here, MSA is asking the Court to inject itself into contract administration matters and upset USPS's discretion in administering contracts—despite MSA admitting the discretion to shift work among awardees remains with USPS.[8]  The Court, however, is unable to address such matters as it is the purview of USPS alone to act as a contract manager, not the Court.  *See Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (explaining the Court of Federal Claims does not have jurisdiction over contract administration matters).

MSA also argues "the wholesale shift of one contractor's entire workload (*i.e.*, MSA) to other contractors, is facially 'an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for'"—MSA went from five clusters to zero—and "[t]his is without question the type of alteration that is within the purview of a cardinal change and thus subject to this Court's examination under its bid protest jurisdiction."  MSA's Mot. at 9.  At oral argument, MSA argued the removal of the contracts from MSA was a cardinal change sufficient to warrant the Court's examination merely because USPS transferred all MSA's contracts to other contractors.  *See* Tr. at 92:8–23 ("THE COURT:  With respect to the cardinal change standard . . . how is the removal of the clusters a cardinal change that makes it subject to the Court's examination?  [MSA:]  [A] cardinal change is [when] you're dealing with the scope, right?  What is the scope of the contract?  Is [] the

---

[8] MSA argues it would be arbitrary and capricious for USPS not to reassign contracts back to MSA and agrees it is within USPS discretion to control contract assignment.  *See* Tr. 85:1–13 ("[MSA:]  [W]e're saying it's arbitrary and capricious for [USPS] to continue with GK-9 [and AMK9] when MSA is available.").

[g]overnment acting outside of the scope? And when it is, then its subject to bid protest jurisdiction, and what we're saying is that when . . . millions of dollars in contract dollars, and you know, five regions are taken from one contractor to another, that is . . . significant enough change in scope such that it's a cardinal change and subject to bid protest jurisdiction."). MSA, however, was unable to provide the Court with a case standing for such a proposition. *See* Tr. at 92:24–93:11 ("THE COURT: Are there any cases that treat contract terminations like that as a cardinal change? [MSA:] [T]here's no case directly on point.") MSA also admits its contract has not actually been terminated with USPS and it can be assigned or re-assigned work under the contract by USPS at any time. *See* Tr. at 102:18–23 ("[MSA:] [MSA] actually ha[s]n't been terminated, so there's still a contract with MSA, and the [g]overnment . . . can . . . pull people off the bench and put them in the game."). Here, because USPS has not terminated the contracts and can assign contracts back to MSA at any time, it is not within the Court's purview to interfere with USPS's discretionary contract administration. *See Distributed Sols.*, 539 F.3d at 1346 (explaining the Court of Federal Claims does not have jurisdiction over contract administration matters).

 As discussed *supra*, the reinstatement of contracts MSA seeks is within the discretion of USPS alone. Indeed, at oral argument before the Federal Circuit, the government requested the Federal Circuit not upset USPS's current administration of the contract in 2024 because so much has occurred since the Court's initial decision. *See* Tr. at 52:4–13 ("[THE COURT:] So from the [g]overnment's perspective, I guess is it a fair statement . . . with respect to moving on, the [g]overnment's request was that . . . [USPS's] administration of the contract not be upset in the 2024 time frame after so much had happened since the initial decision? [GOVERNMENT:] Yes, Your Honor."). The Federal Circuit chose to only reverse MSA's injunction and did not disrupt the contracts. *See* Tr. at 52:17–22 ("THE COURT: And at the end of the day the Federal Circuit made a legal decision that the Government took no stake in, but the Federal Circuit seems to have agreed with the [g]overnment that the contract not be upset."). The Federal Circuit also appeared receptive to the fact the parties simply wanted to "move on," perhaps intending to keep contract administration within the discretion of USPS, and it is now the Court's goal, following the judgment opinion, to permit the parties to "move on." *See* Tr. 51:20–52:1 ("[GOVERNMENT:] [D]uring the oral argument at the Federal Circuit, . . . one thing that the [g]overnment made crystal clear was that [USPS] wanted to move on, and that was something that the Court responded to and seemed to really understand, that [] was most certainly [USPS]'s position."). At bottom, USPS is the appropriate decision-maker as to whether sites will be added to MSA's existing contract—which has not been terminated—so USPS gets to decide if everyone can "move on." *See id.* In fact, after the Federal Circuit reversal, USPS internally decided it was satisfied with the current contractors and found reinstatement of MSA's contracts was not warranted. *See* Tr. at 99:17–100:3 ("THE COURT: [I]s it safe to assume that [USPS], after the Federal Circuit decision contemplated re-awarding sites to MSA and that there was a decision to do or not to do or to perhaps [in the] future change something? [GOVERNMENT:] [W]hen the Federal Circuit issued its decision . . . [USPS] had a discussion, and, . . . [USPS is] happy with the performance of the vendors that they have now and decided against [reinstatement] and continued to move forward."). Accordingly, the Court will not inject itself into USPS's contract administration and require USPS to do something it already internally decided against—reinstating MSA's contracts. *See Distributed Sols.*, 539 F.3d at 1346

(explaining the Court of Federal Claims does not have jurisdiction over contract administration matters).

### 3.    Whether MSA Should Have Sought Relief Through USPS Administrative Processes

The Court next analyzes whether MSA should have sought relief through administrative processes at USPS. MSA argues it was not required to exhaust administrative remedies prior to seeking relief from the Court. *See* MSA's Mot. at 9–10 (citing *Samsara, Inc. v. United States*, 170 Fed. Cl. 229, 236–37 (2024));[9] *see also* Tr. at 93:20–24 ("THE COURT: And it's Samsara that you cite for this Court having jurisdiction? [MSA:] Samsara just merely stands for the proposition that we do not need to exhaust our administrative remedies at [USPS]."). MSA chose not to pursue administrative relief at USPS because it desired to pursue the avenue it believed would achieve the quickest resolution, Tr. at 89:11–90 ("THE COURT: But it seems . . . that next step would be for MSA to immediately file an administrative action [at USPS]. [MSA:] [Y]ou know, that would be an avenue that's available to us, you know, with a client that wants its contracts back as quickly as possible. We chose to pursue the avenue we thought was going to be the quickest. I mean, I think they're all valid avenues."), even though USPS itself refers to its disagreement process as a "mandatory" administrative remedy, *see* 39 C.F.R. § 601.108(h) ("The party lodging [a USPS final contract award] disagreement may seek review of [USPS's] final contract award only after the mandatory administrative remedies provided under § 601.107 and § 601.108 have been exhausted"). Despite maintaining it did not need to seek relief from USPS, MSA admitted it had sent a letter to USPS following the Federal Circuit's decision but did not receive a response. *See* Tr. at 89:11–23 ("But it seems, then, that the next step would be for MSA to immediately file an administrative action [at USPS] and say 'Here we are. We were a great value in 2022. Some third party over there on the Court of Federal Claims messed that up, but now we're back in business. [USPS] should reconsider us, and it would be arbitrary and capricious for us to, in 2024, not be considered a best value again.' [MSA:] I mean, we essentially did that. I mean, we did send a letter to [USPS] right after the Federal Circuit's decision, and they didn't respond . . . ."). MSA, by its own admission, knew it could—and probably should have—sought relief from USPS. *See* Tr. 90:22-91:21 ("[THE COURT:] [F]rom the Government's perspective, can MSA file an action with [USPS] to be considered the best value again and have the contract managers at [USPS] consider it? [GOVERNMENT:] The time for that, Your Honor, has passed, so as far as any substantive evaluation of those claims, they would not be able to do that at this time. . . . THE COURT: How does the availability of MSA to perform based on the Federal Circuit decision affect the timing? [GOVERNMENT:] Well, it's still a mandatory procedure under [USPS]'s regulation, and I'm not sure the regulation contemplates the scenario that we have here. I mean, . . . it's a very unusual set of circumstances we have, but it is mandatory nevertheless. [GK9:] Even if

---

[9] MSA argues *Samsara* supports it was not required to exhaust administrative remedies at USPS prior to seeking relief from the Court because the court in *Samsara* found USPS's regulations to not be mandatory in all cases. *See* MSA's Mot. at 9–10; *see also* Tr. at 93:25–94:12. In determining USPS's administrative processes were not mandatory, *Samsara* relied on the Supreme Court case *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). *See Samsara*, 170 Fed. Cl. at 236. When pressed at oral argument MSA could not explain how the *McCarthy* case was applicable to the exhaustion of administrative procedures at USPS. *See* Tr. at 93:20–98:1 (discussing the applicability of *Samsara* to the current case).

they got to toll that period instead of the award, it was ten days after the issuance of the mandate, it's still done. It's a ten-day period from some time."); *see also* 39 C.F.R. § 601.108(d) (detailing the "10-day" timeframe for a party to contest final USPS contracting decisions). MSA even indicated it was aware of the ten-day timeframe it had to contest the contract awards with USPS, and MSA knew its decision to not pursue relief from USPS was a strategic decision it would have to later contend with and possibly even "lose on." *See* Tr. 91:22–25 ("[MSA:] [W]e disagree with that view, but I also acknowledge that it is a view that we're going to have to contend with, and we may end up on the losing end of that one."). Yet, MSA would rather request the Court to interfere in USPS's administration of contracts now, than seek relief through administrative processes. *See supra* Section V.B.2. It is, however, USPS's job to administer and manage contracts—not the Court's. *See Distributed Sols.*, 539 F.3d at 1346 (explaining the Court of Federal Claims does not have jurisdiction over contract administration matters).

MSA also admits it would be problematic for the Court to reinstate MSA's contracts. *See* Tr. at 81:9–20 ("[THE COURT:] [W]hat you're asking for now is to disrupt [USPS]'s rollout of the K-9 detection award to two other parties. [MSA:] [MSA is] asking this Court to order [USPS] to terminate its awards to other parties, which, as I noted during the hearing on the motion for stay pending appeal, . . . would be a problematic thing for the Court to do, or a potentially problematic thing for the Court to do . . . ."). As discussed *supra*, the Federal Circuit was apprised of the status of the contracts throughout the appeal and considered such status in both its denial of MSA's Motion to Expedite and in its final judgment, and the Court cannot reinstate MSA's contracts. In asking the Court to disrupt USPS's rollout of the contracts, MSA simply wants the Court to ignore the fact MSA did not challenge USPS's February 2023 awards prior to filing its Motion for Relief. If MSA had an issue with the Court's previous decision, it had every opportunity to protest the awards at USPS following the Federal Circuit reversal—just as it has done on numerous other occasions. *See supra* Section I.B. MSA also premises its argument on the Court reinstating to MSA the September 2022 award decision. *See* MSA's Mot. for Relief at 17. GK9 argues the Court cannot reverse its previous decision of rejecting MSA's request to reinstate the 2022 awards because the 2023 award superseded and replaced the prior ones "as it is a collateral attack on the Court's 2023 opinion." *See* GK9 Reply at 8–9 (first quoting *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1328 (Fed. Cir. 2008) ("[C]laim preclusion bars a collateral attack on an earlier judgment."); then quoting *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1340 (Fed. Cir. 2020) ("A claim is a 'collateral attack' on a final judgment where 'successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.'" (quoting *Nasalok Coating Corp.*, 522 F.3d at 1324))). As such, MSA is now excluded from challenging this decision for the first time in its Motion for Relief as MSA should have exhausted the mandatory USPS administrative processes following the Federal Circuit's decision as USPS is the appropriate decision-maker—not the Court. *See* 39 C.F.R. §§ 601.107–08.

## V.    Whether the Court Can Grant MSA's Relief Under Rule 60

MSA—in a single paragraph—seeks alternative relief under RCFC 60(b). *See* MSA's Mot. at 19. MSA acknowledges "Rule 60(b)(6) is not the best avenue for MSA to seek relief, since this Court's judgment of November 22, 2022[,] has completely dissolved such that there is no longer a 'judgment' from which this Court could grant relief." *Id.* at 19. MSA, however,

avers "should the Court feel it is necessary to rely on Rule 60 to afford MSA the relief it seeks, MSA has certainly established in this filing that there are multiple compelling reasons for granting it relief from judgment." *Id.* RCFC 60(b) provides the Court "may relieve a party . . . from a final judgment." RCFC 60(b). Rule 60 motions under RCFC 60(c)(1) "must be made within a reasonable time." RCFC 60(c)(1). Here, MSA is bringing a Rule 60 motion more than a year and a half after the Court's 22 November 2022 decision. At oral argument, MSA argued its Rule 60 motion was brought within a reasonable time and was specifically timely under Rule 60(b)(5) following the reversal of the November 2022 decision. *See* Tr. at 103:18–104:4 ("[THE COURT:] [U]nder Rule 60, it requires a reasonable time. Here we're more than a year and a half after the Court's original decision in November 2022. Is this a reasonable time? [MSA:] [Y]es, . . . the reason [MSA is] filing a Rule 60 motion is because there has been a reversal . . . under [Rule] 60(b)(5), that's one of the reasons why you file a Rule 60 motion, and we certainly filed it timely relative to the Federal Circuit's decision reversing this Court's order."). Given the timing of the Rule 60 motion, MSA has offered no persuasive argument as to why the Court should "relieve [MSA] . . . from a final judgment." RCFC 60(b).

MSA further argues just because an argument is not one's best argument, does not mean it is not a valid alternative argument. *See* Tr. at 105:21–23 ("[MSA:] I would just say that just because it's not your best argument doesn't mean that it's not a valid alternative argument.") The government, however, was under the impression MSA abandoned its Rule 60 motion, specifically because MSA stated in its brief it was "not the best avenue for MSA to seek relief." Tr. at 105:13–20 ("THE COURT: [GOVERNMENT], any response on the Rule 60 argument[?] [GOVERNMENT:] Your Honor, from reading MSA's initial filing, [the government was] actually under the impression that it had abandoned that argument. What it says . . . is that Rule 60(b)(6) specifically is not the best avenue for MSA to seek relief, and we agree with that."). GK9 relies on *Retractable Technologies, Inc. and Thomas J. Shaw v. Becton Dickinson*, 757 F.3d 1366 (Fed. Cir. 2014), to argue MSA is not entitled to use Rule 60 to circumvent the mandate rule. *See* Tr. at 104:7–21 ("[GK9:] There is [*Retractable Tech. vs. Becton Dickinson and Co.*, 757 F. 3d 1366] from 2014 . . . the point of that case is you can't use a Rule 60(b) motion to circumvent the mandate."); *see Becton Dickinson*, 757 F.3d at 1373 (explaining since the mandate rule foreclosed the relief sought, the court did not need to decide "whether Rule 60(b) was an appropriate vehicle for the requested relief"). In rebuttal, MSA argues this is not a circumvention attempt, as the mandate did not foreclose any relief it presently seeks. *See* Tr. at 105:24–106:10 ("[THE COURT:] Any response on [*Retractable*]? [MSA:] [MSA has] already addressed at length that we're not circumventing the mandate, right? The mandate does not foreclose anything that we're asking for here.") Yet, MSA admits there is no case where Rule 60 allows for the relief requested here. *See* Tr. at 106:13–18 ("THE COURT: Is there any case that [MSA has] where a Rule 60 motion was taken up in order to address relief like this after a Federal Circuit reversal? [MSA:] There is not, not that we're aware of, Your Honor."). As discussed *supra* Section V.A, the Court has determined the mandate rule forecloses the relief MSA seeks and MSA is therefore not entitled to relief under RCFC 60. *See Becton Dickinson*, 757 F.3d 1366 (holding Rule 60 cannot allow for relief foreclosed by the mandate rule).

## VII. Conclusion

For the foregoing reasons, the Court **DENIES** MSA's Motion for Relief, ECF No. 127.

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge